## IN THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF FLORIDA

### CASE NO.:

CANDACE HARDY, individually

and on behalf of all others similarly situated,

Plaintiff,

v.

BED BATH & BEYOND, INC., a

NEW JERSEY corporation,

Defendant.

_____/

### ORIGINAL CLASS ACTION COMPLAINT

Plaintiff, CANDACE HARDY, ("Plaintiff") by and through her undersigned counsel, hereby files this class action complaint on behalf of herself and all others similarly situated throughout the United States, and alleges against Defendant, BED BATH & BEYOND, INC., ("Defendant") as follows:

### I.    INTRODUCTION

1. Since at least 1985, Defendant has represented itself as a reputable marketer of domestic merchandise.  Defendant markets, advertises, distributes and sells various types of bedding and linens including but not limited to sheets and pillowcases. In particular, Defendant distributes Wamsutta Dream Zone 1000 Thread Count 100% Pima Cotton Pillowcases, which are advertised as being "100% Pima Cotton" (the "Product"). A true and correct representation of the Product label and online advertisement is attached

hereto as **Exhibit 1**.

2.  Pima cotton is a premium type cotton prized for its long fiber strands, which give Pima cotton a softer and more desirable feel than most other cotton fibers. Pima cotton's longer fiber length also makes the cotton stronger and more durable, resulting in higher quality products. On its website, Defendant Bed Bath and Beyond asserts that the "extra-long, dense fibers make PimaCott softer, more durable, and more vibrant than regular cotton."[1]

3.  Although Defendant represents that the Product is "100% Pima Cotton," testing has shown that the Product contains only 2% Pima cotton, contrary to the "100% Pima Cotton" representation that appears prominently and conspicuously on the Product label, fiber content tag, and Defendant's website.  Testing reports analyzing the Pima Cotton content of the Product are attached hereto as **Exhibit 2.**

4.  Plaintiff was induced to buy the Product by the words "100 % Pima Cotton." Plaintiff and consumers purchased the premium priced Product in lieu of the less expensive products, for the purpose of obtaining a higher quality product. Plaintiff and consumers expected to and did purchase premium Pima cotton pillowcases only to learn that they were in fact purchasing pillowcases with only 2% of the Pima cotton fiber advertised.

5.  The misrepresentation regarding the true amount of Pima cotton is also significant because the Product could pose a potential threat to consumers with textile allergies. Both the type of textile fiber as well as any chemical additives to which the fibers have been exposed can be a cause of allergic dermatitis.

---

[1]Bed Bath and Beyond, Inc.  April 11 2017, https://www.bedbathandbeyond.com/store/product/wamsutta-reg-500-thread-count-pimacott-reg-pillowcases-set-of-2/3310412?categoryId=14526; "PimaCott" is a supply chain coalition that markets American Pima Cotton.

6.  Defendant's false and misleading representations and omissions violate state and federal law, including Florida's Deceptive and Unfair Trade Practices Act and the Textile Products Identification Act, as detailed more fully below.

## II.    JURISDICTION AND VENUE

7.  This Court has jurisdiction over the subject matter presented by this Complaint because it is a class action arising under 18 U.S.C. § 1332(d), which, under the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (2005), explicitly provides for the original jurisdiction of the Federal Courts of any class action in which any member of the Plaintiff class is a citizen of a state different from any Defendant, and in which the matter in controversy exceeds in the aggregate the sum of $5,000,000, exclusive of interest and costs.

8.  On information and belief, Plaintiff alleges that the total claims of individual class members in this action are in excess of $5,000,000 in the aggregate, exclusive of interest and costs, as required by 28 U.S.C. § 1332(d)(2) and (5). Plaintiff is a citizen of the State of Florida, as set forth below, and Defendant can be considered a citizen of New Jersey. Therefore, diversity of citizenship exists under CAFA as required by 28 U.S.C. § 1332(d)(2)(A).

9.  Furthermore, Plaintiff alleges that the total number of members of the proposed Plaintiff Class is greater than 100, pursuant to 28 U.S.C. § 1332(d)(5)(B).

10. Venue in this district is proper pursuant to 28 U.S.C. §1391(b) because Defendant conducts business within, may be found in, and is subject to personal jurisdiction in this

judicial district, and Plaintiff resides in and purchased the Product that is the subject of this action in this judicial district.

## III.    PARTIES

11. Plaintiff Candace Hardy is an individual consumer over the age of 18. She resides in Miami-Dade County and is a citizen of Florida. Plaintiff purchased the Product at a Bed Bath & Beyond online and received the Product at her residence. Plaintiff seeks injunctive relief and damages on behalf of herself and the Class, and respectfully requests a jury trial on damage claims.

12. Defendant Bed Bath & Beyond, Inc. lists its corporate headquarters at 650 Liberty Avenue, Union, New Jersey. Therefore, Defendant may be considered a citizen of New Jersey. At all relevant times, Defendant marketed, distributed and sold various consumer products, including the Product that is the subject of this lawsuit, to Plaintiff and members of the class throughout this judicial district and the rest of the United States.

## IV.    FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

13. Defendant Bed Bath and Beyond, Inc. markets, advertises, distributes and sells various types of bedding and linens including Wamsutta Dream Zone 1000 Thread Count 100% Pima Cotton Pillowcases.

14. Pima Cotton is a long fiber cotton used to produce textiles of exceptional quality. Pima Cotton is one of the longest cotton fibers grown. Its average length can reach up to

4

1.2 to 1.48 inches. *See* Textest Report, **Exhibit 2.**  It is grown from special seeds that only grow in limited temperate locations and it comprises a small fraction of total cotton grown.  The long fibers of Pima cotton render it more desirable because the fiber yarns can be spun finer, yielding softer fabrics and textiles. In contrast, the majority of cotton is called "upland" cotton and cannot be spun as finely.[2]  In addition, the superior strength of Pima cotton fibers renders its resulting fabrics more durable and resistant to stress, while its ability to absorb liquids gives fabrics a richer, deeper color.[3]

15. Plaintiff purchased the "100% Pima Cotton" pillowcases from a Bed Bath & Beyond, Inc. online store because they were allegedly "100% Pima cotton."

16. Plaintiff believed the "100% Pima Cotton" representation meant that the Product contained only Pima Cotton as advertised.  However, test results indicate that the Product contains approximately 2% Pima Cotton, the rest being composed of inferior quality cotton.

17. Obviously, a product containing only 2% Pima cotton is clearly is not "100% Pima Cotton," and Defendant's advertising and labeling is deceptive and likely to mislead the public as a result. Plaintiff and class members would not have purchased the Product if they had known that the representation about the Product is false.

---

[2] "16 Facts About Cotton You Don't Know," Barnhardt Natural Fibers Group, April 26 2016, https://www.barnhardtcotton.net/blog/16-facts-about-cotton-that-you-dont-know/.

[3] "Facts and General Information,"Swicofil, March 28 2017, http://www.swicofil.com/products/001cotton.html (2015); *See also* "Peruvian Pima Cotton," April 8 2017, **http://www.peruvianconnection.com/category/fiber+and+product+information/peruvian+pima+cotton.do ;** *See also* Bed Bath and Beyond, Inc., April 11 2017, https://www.bedbathandbeyond.com/store/product/wamsutta-reg-500-thread-count-pimacott-reg-pillowcases-set-of-2/3310412?categoryId=14526.

18. In purchasing the Product, Plaintiff saw, read, and relied on the packages and advertising for the Product claiming to be "100% Pima Cotton." Plaintiff and class members have been damaged by their purchase of the Product because the labeling and advertising for the Product was and is deceptive and misleading; therefore, the Product is worth less than what Plaintiff paid for it, and Plaintiff and class members did not receive what they reasonably intended to receive, which was a product that was "100% Pima Cotton."

19. Plaintiff and Class members purchased the Product because they believed that the Product was "100% Pima Cotton," which they interpreted to mean that the Product does not contain any other types of cotton fibers. If Plaintiff had known that the Product contained only 2% Pima Cotton, Plaintiff would not have purchased the Product.

20. Defendant's statement that the Product is "100% Pima Cotton," was a material factor to Plaintiff and Class members in deciding to purchase the Product because they would not have purchased the Product had it not been advertised and labeled as such.

21. In addition to the inferior quality of the actual Product, the Product could pose a potential threat to consumers with textile allergies because both the type of textile fibers used as well as the chemicals they have been exposed to can be a cause of allergic dermatitis.[4] For example, most cotton is subject to industrial harvesting, which breaks down cotton fibers with harsh chemicals and leaves impurities. In contrast, Pima cotton is hand-picked and often advertised as safe for sensitive skin because of its hypoallergenic attribute.[5]

22. At a minimum, Plaintiff and Class Members contend that Defendant should cease

---

[4] Alex Reis, PhD. "Synthetic Fabrics and Allergies," BeyondAllergy.com, March 28 2017, http://www.beyondallergy.com/skin-allergies/synthetic-fabrics-and-allergies-3.php.

[5] "5 Reasons Why Pima Cotton is Better Than Regular Ol' Cotton," Noble Carriage, August 17 2016, https://noblecarriage.com/blogs/news/why-organic-pima-cotton.

labeling the Product "100% Pima" or alternatively, that Defendant should include only

Pima cotton in its Product.

## V. CLASS ALLEGATIONS

23. Plaintiff re-alleges and incorporates by reference all allegations set forth above.

24. Plaintiff brings this class action pursuant Federal Rule of Civil Procedure 23 and seeks

certification of the claims and certain issues in this action pursuant to the applicable

provisions of Federal Rule of Civil Procedure 23 on behalf of the following individuals:

All United States residents who purchased Wamsutta Dream Zone 1000 Thread Count
100% Pima Cotton Pillow Cases (the "Product") from Defendant Bed Bath & Beyond, Inc.
("Defendant") in the United States from the four years preceding the filing of this complaint to
present ("Class Period").

Excluded from the Class are Defendant and any officer, director, employee, legal

counsel, firm, trust, corporation, or other entity related to or affiliated with Defendant and the

members of the judiciary and their office staff to whom this case may be assigned.

25. Defendant's practices and omissions were applied uniformly to all members of the Class,

so that the questions of law and fact are common to all members of the Class. All

members of the Class were and are similarly affected by having purchased and used the

Product containing only 2% Pima Cotton, despite the clear representation by Defendant

that the Product is "100% Pima Cotton," and the relief sought herein is for the benefit of

Plaintiff and members of the putative Class.

7

26. On information and belief, Plaintiff alleges that the Plaintiff Class is so numerous that joinder of all members would be impractical. Based on the annual sales of the Product and the popularity of the Product, it is apparent that the number of consumers of the Product would at least be in the many thousands, thereby making joinder impossible.

27. Questions of law and fact common to the Plaintiff and the Class exist that predominate over questions affecting only individual members, including, *inter alia*:

   a. Whether Defendant's practices in connection with the design, testing, manufacture, assembly, development, promotion, marketing, advertising and sale of the Product were deceptive or unfair in any respect, thereby violating the Florida Deceptive and Unfair Trade Practices Act, *inter alia*, sections 501.201 to 201.213, *Florida Statutes*;

   b. Whether the Product is "100% Pima Cotton";

   c. Whether the Product in fact contains only 2% Pima Cotton;

   d. Whether Defendant negligently misrepresented the true nature of the Product;

   e. Whether Defendant breached express warranties in its sale of the Product, thereby causing harm to Plaintiff and Class members;

   f. Whether Defendant breached implied warranties in its sale of the Product, thereby causing harm to Plaintiff and Class members;

   g. Whether Defendant's advertising and sale of the Product violates the Textile Products Identification Act, 15 U.S.C. § 70 *et seq.*;

   h. Whether Defendant's conduct as set forth above injured consumers and if so, the extent of the injury; and

   i. Whether Plaintiffs are entitled to a Declaratory Judgment as a result of

Defendant's practices and representations related to the marketing, labeling and sales of the Product.

28. The claims asserted by Plaintiff in this action are typical of the claims of the members of the Plaintiff Class, as the claims arise from the same course of conduct by Defendant, and the relief sought is common.

29. Plaintiff will fairly and adequately represent and protect the interests of the members of the Plaintiff Class. Plaintiff has retained counsel competent and experienced in both consumer protection and class action litigation.

30. Certification of this class action is appropriate under Federal Rule of Civil Procedure 23 because the questions of law or fact common to the respective members of the Class predominate over questions of law or fact affecting only individual members. This predominance makes class litigation superior to any other method available for the fair and efficient adjudication of these claims.

31. Absent a class action, it would be highly unlikely that the representative Plaintiff or any other members of the Class would be able to protect their own interests because the cost of litigation through individual lawsuits might exceed expected recovery.

32. Certification is also appropriate because Defendant acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the Class as a whole.

33. Further, given the large number of class members, allowing individual actions to proceed in lieu of a class action would run the risk of yielding inconsistent and conflicting adjudications.

34. A class action is a fair and appropriate method for the adjudication of the controversy, in

that it will permit a large number of claims to be resolved in a single forum simultaneously, efficiently, and without the unnecessary hardship that would result from the prosecution of numerous individual actions and the duplication of discovery, effort, expense and burden on the courts that such individual actions would engender.

35. The benefits of proceeding as a class action, including providing a method for obtaining redress for claims that would not be practical to pursue individually, outweigh any difficulties that might be argued with regard to the management of this class action.

## VI.    FIRST CAUSE OF ACTION: VIOLATION OF FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, FLA. STAT. §§ 501.201, *ET SEQ.*

36. Plaintiff re-alleges and incorporates by reference verbatim the allegations set forth in the preceding paragraphs.

37. This cause of action is brought pursuant the Florida Deceptive and Unfair Trade Practices Act, Sections 501.201 to 501.213, *Florida Statutes*. The express purpose of the Act is to "protect the consuming public...from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce" Section 501.202(2).

38. The sale of the Product at issue in this cause was a "consumer transaction" within the scope of the Florida Deceptive and Unfair Trade Practices Act, Sections 501.201 to 501.213, *Florida Statutes*.

39. Plaintiff is a "consumer" as defined by Section 501.203, *Florida Statutes*. The Product is a "good" within the meaning of the Act. Defendant is engaged in trade or commerce

within the meaning of the Act.

40. Section 501.204(1), *Florida Statutes* declares as unlawful "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce".

41. Defendant has violated the Act by engaging in the unfair and deceptive practices described above, which offend public policies and are immoral, unethical, unscrupulous and substantially injurious to consumers. Specifically, Defendant has represented its Product as containing only premium quality "100% Pima Cotton" when in fact the Product contains only 2% of the Pima Cotton promised.

42. Plaintiff and Class Members have been aggrieved by Defendants' unfair and deceptive practices in that they purchased and consumed Defendant's Product.

43. A reasonable consumer necessarily relies on commercial retail companies to honestly represent the true nature of their products.

44. As described in detail above, Defendant has represented that its Product is "100 % Pima Cotton"' when in fact the Product contains only 2% Pima cotton.

45. Defendant has deceived reasonable consumers, like Plaintiff and the Class, into believing its Product was something it was not — "100% Pima Cotton."

46. The knowledge required to discern the true nature of Defendant's Product -- namely that the Product contains inferior types of fibers sewn among the Pima fibers claimed on the label, is beyond that of the reasonable consumer.

47. The damages suffered by the Plaintiffs and the Class are directly and proximately caused by the deceptive, misleading and unfair practices of Defendant, as described above.

48. In addition, Section 501.204(2), *Florida Statutes* states that "due consideration be given

to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a)(1) of the Trade Commission Act". Defendants' unfair and deceptive practices are likely to mislead – and have misled – the consumer acting reasonably under the circumstances and, therefore, violate § 500.04, Florida Statutes and 21 U.S.C. § 343 because the Product is mislabeled under the Textile Identification Act. Defendant's marketing of said Product therefore constitutes an unfair method of competition and an unfair and deceptive practice as declared by the FTC in 15 U.S.C. §70a § 3(a), (b), and (c) of the Textile Identification Act.

49. The Federal Trade Commission ("FTC") has clearly stated that "[i]f you advertise or sell clothing or household items containing cotton, the product labels must reflect the fabric content accurately." [6] The FTC has further specified that the fiber disclosure may include the name of a type of cotton, *as long as* the name is truthful and not deceptive. The FTC even states as an example, that "[y]ou can label a shirt '100% Pima Cotton' as long as the garment contains 100% Pima cotton fibers." [7]

50. Defendant is a "person" as defined by 15 U.S.C. §70a, § 2(a).

51. Pima Cotton is a "textile fiber" as defined by 15 U.S.C. § 70a, § 2(b)

52. The Product is a "textile fiber product" as defined by 15 U.S.C. §70a § 2(h)(3).

53. 15 U.S.C. § 70a, § 3(a) provides, "[t]he introduction, delivery for introduction,

---

[6] "Calling It Cotton: Labeling and Advertising Cotton Products," Federal Trade Commission, July 2014, https://www.ftc.gov/tips-advice/business-center/guidance/calling-it-cotton-labeling-advertising-cotton-products.

[7] "Threading Your Way Through the Labeling Requirements Under the Textile and Wool Act," Federal Trade Commission, July 2014, https://www.ftc.gov/tips-advice/business-center/guidance/threading-your-way-through-labeling-requirements-under-textile#premium.

manufacture for introduction, sale, advertising, or offering for sale, in commerce, or the transportation or causing to be transported in commerce, or the importation into the United States, of any textile fiber product which is misbranded or falsely or deceptively advertised within the meaning of this subchapter or the rules and regulations promulgated thereunder, is unlawful, and shall be an unfair method of competition and an unfair and deceptive act or practice in commerce under the Federal Trade Commission Act (15 U.S.C. § 41 *et seq.*).

54. 15 U.S.C. § 70a, § 3(b) provides, "[t]he sale, offering for sale, advertising, delivery, transportation, or causing to be transported, of any textile fiber product which has been advertised or offered for sale in commerce, and which is misbranded or falsely or deceptively advertised, within the meaning of this subchapter or the rules and regulations promulgated thereunder, is unlawful, and shall be an unfair method of competition and an unfair and deceptive act or practice in commerce under the Federal Trade Commission Act (15 U.S.C. § 41 *et seq.*).

55. 15 U.S.C. §70a Section 3(c) provides, "[t]he sale, offering for sale, advertising, delivery, transportation, or causing to be transported, after shipment in commerce, of any textile fiber product, whether in its original state or contained in other textile fiber products, which is misbranded or falsely or deceptively advertised, within the meaning of this subchapter or the rules and regulations promulgated thereunder, is unlawful, and shall be an unfair method of competition and an unfair and deceptive act or practice in commerce under the Federal Trade Commission Act (15 U.S.C. § 41 *et seq.*).

56. 15 U.S.C. §70b Section 4 (a) provides that "a textile fiber product shall be misbranded if it is falsely or deceptively stamped, tagged, labeled, invoiced, advertised, or otherwise

identified as to the name or amount of constituent fibers contained therein.

57. Accordingly, Defendant's labelling violates 15 U.S.C. §§ 70a and 70b, and is therefore an unfair method of competition and an unfair and deceptive act or practice that violates the FTC Act, and therefore violates the Florida Deceptive and Unfair Trade Practices Act.

**58.** Pursuant to Section 501.211(1), *Florida Statutes*, Plaintiff and the Class seek a declaratory judgment and court order enjoining the above described wrongful acts and practices of the Defendant and for restitution and disgorgement.

**59.** Additionally, pursuant to §§ 501.211(2) and 501.210(5), *Florida Statutes*, Plaintiff and the Class make claims for damages, as well as reasonable attorney's fees and costs.

## VII. SECOND CAUSE OF ACTION: NEGLIGENT MISREPRESENTATION

**60.** Plaintiff re-alleges and incorporates by reference verbatim the allegations set forth in the preceding paragraphs.

**61.** Defendant has negligently represented that the Product is entirely "100% Pima Cotton," when in fact it contains a mere 2% Pima cotton.

**62.** Defendant has omitted a material fact to the public, including Plaintiff and Class Members, about its Product. Through advertising not related to the label, Defendant has failed to disclose that the Product contains only 2% of the premium Pima cotton fibers advertised.

**63.** Defendant knew or should have known that these omissions would materially affect Plaintiff's and Class Members' decisions to purchase the Product.

**64.** Plaintiff and other reasonable consumers, including the Class members, reasonably relied

on Defendant's representations set forth herein, and, in reliance thereon, purchased the Product.

65. The reliance by Plaintiff and Class members was reasonable and justified in that Defendant appeared to be, and represented itself to be, a reputable business.

66. Plaintiff would not have been willing to pay for Defendant's Product if she knew it contained additional and inferior types of cotton.

67. As a direct and proximate result of these misrepresentations, Plaintiff and Members of the Class were induced to purchase and consume Defendant's Product, and have suffered damages to be determined at trial in that, among other things, they have been deprived of the benefit of their bargain in that they bought a Product that was not what it was represented to be, and they have spent money on a Product that had less value than was reflected in the premium purchase price they paid for the Product.

## VIII. THIRD CAUSE OF ACTION: BREACH OF EXPRESS WARRANTY

68. Plaintiff re-alleges and incorporate by reference verbatim the allegations set forth in the preceding paragraphs.

69. Defendant has expressly represented that the Product contains "100% Pima Cotton" when in fact, it contains a mere 2% Pima Cotton.

70. Plaintiff is informed and believes, and thereon alleges, that Defendant made different express warranties, including, but not limited to, that the Product consisted exclusively of 100% premium Pima Cotton and therefore impliedly less likely to cause textile allergies.

71. As alleged above, because the Product is made up of only 2% of the Pima cotton, it may

even pose a health risk to consumers with textile allergies. Defendant failed to disclose the existence of the inferior quality cotton fibers in its Product and failed to warn of the potential health risks potentially associated with use of the Product as more fully described above.

72. The failure to adequately disclose the true nature of the Product constitutes a breach of all applicable express and implied warranties as alleged herein, based on all laws that support the breach of express warranty claims by Plaintiff and other members of the Class regarding the true nature of the Product, including but are not limited to the Florida's Consumer Protection Act, the Textile Product Identification Act and common law warranties.

73. As a proximate result of the failure of the Product to perform as expressly warranted by Defendant, Plaintiffs and members of the Class have suffered actual damages in an amount to be determined at trial in that they were induced to purchase a product they would not have purchased had they known the true facts about, and have spent money on a product that was not what it was represented to be, and that lack the value Defendant represented the Product to have.

74. Plaintiff and Class members gave timely notice to Defendant of this breach on behalf of themselves and all members of the Plaintiff Class directly through a Notice letter sent to Defendant on April 19, 2017.

75. Although Plaintiff has provided testing results showing that the Product only contains 2% Pima cotton, Defendant, through its counsel, has refused to provide any evidence to refute that testing.

76. Furthermore, Defendant continues to market the Product without any evidence to support

the claim that the Product is "100% Pima Cotton" as advertised.

## IX. FOURTH CAUSE OF ACTION: BREACH OF IMPLIED WARRANTY OF FITNESS FOR PURPOSE

**77.** Plaintiff re-alleges and incorporate by reference verbatim the allegations set forth in the preceding paragraphs.

**78.** Defendant has impliedly warranted that the Product does not contain any cotton fibers other than Pima Cotton.

**79.** Plaintiff and other Members of the Class sought a premium quality Pima Cotton product. In doing so, Plaintiff and other Members of the Class relied on Defendant's skill and judgment to select and furnish suitable goods for that purpose, and on or about that time, Defendants sold the Product to Plaintiffs and other Members of the Class.

80. By its representations regarding the reputable nature of its company, and by its promotion and marketing of the Product, Defendant warranted that the Product was a safe and premium quality cotton fiber suitable for use by consumers. Plaintiff and Members of the Class bought the Product from Defendant, relying on Defendant's skill and judgment. However, Defendant's Product was not the safe and premium cotton product as promised because it contained only 2% Pima cotton as set forth in detail above.

81. At the time of sale, Defendant had reason to know the particular purpose for which the goods were required, and that Plaintiff and Members of the Class were relying on Defendants' skill and judgment to select and furnish safe and Pima Cotton goods, so that there was an implied warranty that the goods (*i.e.*, the Product), were fit for this purpose.

82. However, Defendant breached its implied warranty at the time of sale because Plaintiff and Members of the Class did not receive suitable goods in as much as the goods contained only 2% of the Pima cotton promised.

83. Because the Product contained a mere 2% Pima Cotton, the Product was not fit for the particular purpose for which it was marketed.

84. As a proximate result of this breach of warranty by Defendant, Plaintiff and Members of the Class have suffered actual damages in an amount to be determined at trial in that they were induced to purchase a product they would not have purchased had they known the true facts about, and have spent money on a product that was not what they were represented to be, and that lack the value Defendant represented the Product to have.

## X. FIFTH CAUSE OF ACTION: SIXTH CAUSE OF ACTION: DECLARATORY JUDGMENT

85. Plaintiff re-alleges and incorporates by reference verbatim the allegations set forth in the preceding paragraphs.

86. Defendant has represented on its label that its Product is "100% Pima Cotton" when in fact, it contains only 2% Pima cotton.

87. A dispute has arisen between the parties concerning Defendant's false labeling.  As set forth above, Plaintiff and those similarly situated contend that Defendant's labeling is false and deceptive.  Plaintiff is informed and believes that Defendant contends that it is entitled to marked the Product as labeled, notwithstanding that the Product is not 100% Pima cotton as advertised and labeled.

88. Plaintiff and the members of the Class seek a declaratory judgment, pursuant to the

Federal Declaratory Judgments Law, 28 U.S.C. §§ 2201 *et seq.* and *Federal Rule of Civil Procedure* 57, requiring Defendant to cease representing its Product is 100% Pima Cotton when it is not. In requesting this declaratory relief, Plaintiff and class members are requesting an interpretation of the rights, legal status and relationships of the parties under the above law and facts.

**89.** Such interpretation is appropriate under the provisions of the Federal Declaratory Judgments Law, 28 U.S.C. §§ 2201 *et seq.* and *Federal Rule of Civil Procedure* 57.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, on behalf of herself and all others similarly situated, prays for relief, jointly and severally pursuant to each cause of action set forth in this Complaint as follows:

1.    For an order certifying that the action may be maintained as a class action and Plaintiff's counsel be appointed as Class Counsel and Plaintiff be appointed as class representative;

2.    For an award of equitable relief as follows:

a. Enjoining Defendant from continuing to engage, use, or employ any unfair and/or deceptive business acts or practices related to the design, testing, manufacture, assembly, development, marketing and advertising of the Product for the purpose of selling the Product in such manner as set forth in detail above;

b. Disgorging all monies that may have been acquired by Defendant as a result of such unfair and/or deceptive act or practices; and

19

c.  Requiring Defendant to disgorge all ill-gotten gains flowing from the conduct described herein.

3.    For a Declaratory Judgment as specified above;

4.    For actual damages in an amount to be determined at trial;

5.    For an award of attorney's fees and costs;

6.    For pre- and post-judgment interest on any amounts awarded; and

7.    For any other award the Court might deem just, appropriate, or proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all issues so triable.

**Dated: June 19, 2017**

**Respectfully Submitted,**

By: /s/ *Angela Arango-Chaffin*

Angela Arango-Chaffin, Esq.
Fla. SBN: 87919
angela@chaffinlawfirm.com
540 West Avenue, Suite 1113
Miami Beach, FL. 33139
(713) 818-2515
*Attorney for Plaintiff CANDACE HARDY and the Proposed Class*

**Exhibit 1**

DE CUIDADO

 TEMPÉRATURE: TIÈDE.

 TEMPERATURA: TIBIO.

 LAVAGE: CYCLE DÉLICAT.

 LAVADO: CICLO SUAVE.

 JAVELLISANT: NE PAS JAVELLISER.

 BLANQUEADO: NO USAR BLANQUEADOR.

 SÉCHAGE: BASSE TEMPÉRATURE SORTIR IMMÉDIATEMENT.

 SECADO: CALOR SUAVE. REMOVER INMEDIATAMENTE.

 REPASSAGE: FER TIÈDE. AU BESOIN.

 PLANCHADO: PLANCHA TIBIA SI FUERA NECESARIO.

## WAMSUTTA
## DREAM ZONE



1000
thread count

THANK YOU FOR PURCHASING OUR PRODUCT. TO ENSURE YOUR SATISFACTION, PLEASE FOLLOW THESE LAUNDERING INSTRUCTIONS CAREFULLY. THESE INSTRUCTIONS CAN ALSO BE FOUND ON THE PRODUCT'S SEWN-IN CARE LABEL.

## CARE INSTRUCTIONS

 TEMPERATURE: WARM

 DRY: LOW HEAT REMOVE PROMPTLY

 WASH: GENTLE CYCLE

  IRON: WARM IRON IF NECESSARY

BLEACH: DO NOT BLEACH

WAMSUTTA
DREAM ZONE

75-4581

Pima-Scott

100% PIMA COTTON
100% COTTON PIMA
100% ALGODÓN PIMA

MADE IN INDIA
FABRIQUÉ EN INDE
HECHO EN INDIA

RN 118458 / CA 41100



**Exhibit 2**

 **LLC**

A registered ISO 9001:2008 laboratory

4207-1 Milgen Road, Columbus, GA  31907          Telephone:  844-309-6337          www.textest.com

TexTesT Report:    4581
Date:               4/10/17
Page:               1 of 5

CLIENT:          **LAW OFFICES OF HOWARD W. RUBENSTEIN**

4000 North Ocean Drive East Tower 201
Singer Island, FL  33404

ATTN:  Howard Rubenstein

SAMPLE IDENTIFICATION:

LABELED 100%  PIMA COTTON
SAMPLE #1        BED BATH & BEYOND   WAMSUTTA DREAM ZONE
PimaCott®      Grown in California       RN100350  CA 53138  1000 Count
Made in India

| FIBER LENGTH AND DISTRIBUTION ASTM D 5103 | | Length Group Lower Limit (in.) | **SAMPLE #1** | |
|---|---|---|---|---|
| | | | Number of Fibers | Percent of Total |
| | | 2.040 | 0 | 0 |
| | | 1.920 | 0 | 0 |
| | | 1.800 | 0 | 0 |
| | | 1.680 | 0 | 0 |
| Extra Long | | 1.560 | 0 | 0 |
| Long | | 1.440 | 1 | 1 |
| Medium | | 1.320 | 0 | 0 |
| Short | | 1.200 | 1 | 1 |
| | | 1.080 | 6 | 6 |
| | | 0.960 | 7 | 7 |
| | | 0.840 | 17 | 17 |
| | | 0.720 | 25 | 25 |
| | | 0.600 | 16 | 16 |
| | | 0.480 | 24 | 24 |
| | | 0.360 | 3 | 3 |
| | | 0.240 | 0 | 0 |
| | | 0.120 | 0 | 0 |
| | | 0.000 | 0 | 0 |
| | | | 100 | 100 |

Probability
2% PIMA  Cotton

Total
Average Length               0.753
Standard Deviation           0.22
Coefficient of Variation     0.29 %

TEXTEST LLC

*Ann R. Underwood*

signed by

TexTest Report:   4581
Date:          4/10/17
Page:          2 of 5

| | |
|---|---|
| SAMPLE IDENTIFICATION: | LABELED 100% PIMA COTTON |
| | SAMPLE #1     BED BATH & BEYOND   WAMSUTTA DREAM ZONE |
| | PimaCott®     Grown in California     RN100350  CA 53138   1000 Count |
| | Made in India |



SUMMARY COMPARISON                1

Average Length inches          0.753
Std. Deviation                 0.218
Coefficient of Varation          0.29 %
Maximum                        1.45
Minimum                        0.374

American Pima Standard  1.2 to 1.48"
Supima Standard 1.25" to 1.56"
Egyptian ELS Std 1.5" to  2.5"
GIZA 87 93 Std. 1.4 to 1.45"
Short Fiber Content= Less the 0.5"

























PimaCott
the new standard in pima purity

100% Pima Cotton grown in California
100% en Coton Pima cultivé en Californie

1000
thread count

ULTRA FINE YARNS
SATEEN WEAVE

ULTRA SOFT, LUXURIOUS
SILK-LIKE FEEL

EUROPEAN ENVELOPE
CLOSURE

FULL LIFETIME WARRANTY

2 STANDARD/QUEEN
PILLOWCASES

WAMSUTTA®
DREAM ZONE

77-4581

PimaCott®

100% PIMA COTTON
100% COTON PIMA
100% ALGODÓN PIMA

MADE IN INDIA
FABRIQUÉ EN INDE
HECHO EN INDIA

RN 10350 / CA 59138

# WAMSUTTA.
## DREAM ZONE.



*the new standard in pima purity*

Experience luxury that lasts. Wamsutta linens are made with PimaCott® - a verified pure pima cotton, grown in the San Joaquin Valley, CA. The purity of our extra long and dense fibers makes PimaCott® softer, more durable, and more vibrant than regular cotton. Never blended or contaminated, you're getting the purest pima possible. It's the Wamsutta quality you expect and the luxuriousness you'll enjoy for years to come.

Wamsutta's commitment to innovation brings you pillowcases that have a tailored European envelope design that holds the pillow in place and neatly covers the end of a pillow.

## 2 STANDARD/QUEEN PILLOWCASES
### 100% PIMA COTTON / 100% COTON PIMA

# 1000
*thread count*

Finished Size 20 in x 28 in [50 cm x 71 cm]
Fits Pillow 20 in x 28 in [50 cm x 71 cm]

Machine washable. See care label on product for complete laundering instructions.
*Lavable à la machine. Voir le mode d'entretien complètes sur l'étiquette du produit*

---

*2 FUNDAS ESTÁNDAR/QUEEN*

*100% Algodón Pima*

*Lavese a máquina. Ver en la etiqueta completas las instrucciones para el lavado.*

*CONTENIDO: 2 PIEZAS*

*50 cm x 71 cm / ajustable a las almohadas 50 cm x 71 cm*

### FULL LIFETIME WARRANTY
From the date of purchase of this product, Bed Bath & Beyond will replace this product or refund the purchase price in the event of any malfunction or defect. To receive warranty service, please return this product with the original receipt to any Bed Bath & Beyond location. This warranty gives you specific legal rights; you may also have other rights, which vary from state to state.

MADE EXCLUSIVELY FOR
BED BATH & **BEYOND**®
650 LIBERTY AVENUE, UNION, NJ 07083
© BED BATH & BEYOND INC. AND ITS SUBSIDIARIES

IMPORTADORA BBBMEX S. DE R.L. DE C.V.
BLVD. MANUEL AVILA CAMACHO #3228
COL. BOULEVARES, NAUCALPAN DE JUÁREZ
ESTADO DE MÉXICO C.P. 53140 MÉXICO
R.F.C. IBB-060425-DI8

WWW.WAMSUTTA.COM

RN 100350
CA 53138

MADE IN INDIA
*FABRIQUÉ EN INDE*
*HECHO EN INDIA*



1000TC SOLID   WHITE

4  44100 27840  0

STANDARD PILLOWCASE