# IN THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 17-cv-22315-RNS

CANDACE HARDY, individually

and on behalf of all others similarly situated,

<div style="margin-left:2em">Plaintiff,</div>                                    CLASS ACTION

v.

BED BATH & BEYOND, INC.,

<div style="margin-left:2em">Defendant.</div>

_____/

## FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiff, CANDACE HARDY, ("Plaintiff") by and through her undersigned counsel, hereby files this First Amended Class Action Complaint, as a matter of right under Federal Rule of Civil Procedure 15, on behalf of herself and all others similarly situated throughout Florida, and alleges against Defendant, BED BATH & BEYOND, INC., ("Defendant") as follows:

## I.    BACKGROUND ALLEGATIONS

1. Defendant "commenced operations in 1971 with the opening of two stores, which primarily sold bed linens and bath accessories. The first store carrying a full line of domestics merchandise and home furnishings was introduced in 1985 using the name "Bed Bath & Beyond" in order to reflect the expanded product offering. In 1992, the Company became a public company, with 34 stores, and began trading on The NASDAQ Global Select Market under the ticker symbol 'BBBY.' In 1999, the Company launched

its first e-commerce website, www.bedbathandbeyond.com." [1]  Defendant sells bedding products through bedbathandbeyond.com as well as retail stores located in Florida. *Id.* Defendant "pursues product differentiation in several ways, including its own product development, and exclusivity and limited distribution with its vendor partners." *Id.* at 5. One of Defendant's proprietary brands is Wamsutta.  *Id.*  Defendant purchases some of its merchandise directly from foreign suppliers located outside the United States.  *Id.* at 6.

2.  Of particular significance to this lawsuit, Defendant offered for sale "Wamsutta Dream Zone, Pimacott the new standard in pima purity, 100% Pima Cotton grown in California, 1000 Thread Count," pillowcases.  To avoid any confusion  true and correct photographs of the label of these pillowcases is attached hereto and incorporated herein as both **Exhibit 1** and pages 3-5 of **Exhibit 2.**  The product described in this paragraph and depicted in the photographs of **Exhibit 1** and **Exhibit 2** for purposes of this First Amended Class Complaint is defined as and will be referred to herein as the "Product."

3.  The labeling of the Product also contains the following statements of fact:

> Wamsutta linens are made with PimaCott®--a verified pure ***pima cotton,*** grown in the San Joaquin Valley, CA.  The purity of our ***extra long*** and dense ***fibers*** makes PimaCott® softer, more durable and more vibrant than regular cotton.  Never blended or contaminated, you're getting the purest ***pima*** possible.

Product label, photographs attached as pages 3-5 of **Exhibit 2** (emphasis added).

Plaintiff viewed and relied upon Defendant's statement at www.bedbathandbeyond.com that the Product contained 100% pima cotton.  Since Plaintiff gave notice the description

---

[1] Bed Bath and Beyond, Inc. Form 10K for the Fiscal Year ended February 25, 2017, filed with SEC April 25, 2017, at 4 (last viewed at SEC.gov October 1, 2017) (Hereinafter "BBB 10K"). The full text of the BBB 10K is incorporated into this First Amended Class Complaint for the purposes for which it is referenced and generally to establish the plausibility of the allegations contained herein.

of the Product at www.bedbathandbeyond.com has been altered to remove the 100%

pima cotton statement, although that statement remains on the label and fiber content tag

of the Product.

4.   PimaCott® is a pima cotton brand.  www.pimacott.com/about-us (last visited October 1,

2017).  The PimaCott® website describes pima cotton as follows:

<div align="center">

Pima Cotton
*Gossypium Barbadense*

</div>

> Pima is considered the finest cotton on earth. As an extra-long staple
> (ESL) cotton, its long fibers make it extra soft and extra strong. The
> result? Luxuriously smooth fabric that is resistant to fraying, tearing,
> pilling, wrinkling, and fading. It's no wonder so many fabrics claim
> to be pure pima. But a recent test revealed 89% aren't pure at all.

www.pimacott.com/cotton-guide/types-of-cotton (last visited October 1, 2017).

5.   As made clear by the quotes above, to be pima cotton, the cotton must be extra-long

staple (ELS) and come from a plant of the species *gossypium barbadense.*  In a

discussion of cotton the word "staple" is used synonymously with "fiber."[2]  The cost of

cotton products depends significantly on the length of the fiber used to manufacture those

products.  Here is how the PimaCott® organization (the organization Defendant

sponsored on the Product label) explains the issue:

> **The Fiber Factor**
> All cottons are not created equal. They're differentiated by the
> length of their fiber (or "staple"), the fine little strands that make up
> a raw piece of cotton. Some cotton species have shorter fibers.
> Others have longer fibers. Some even have extra-long fibers. It all
> depends on the type of cotton.
> The most common type of cotton, Upland, is made of short-staple
> fibers that offer reliable quality at an affordable price. This is the
> most common variety on store shelves. ***Long- and extra-long staple***
> ***cottons include pima cotton*** and Egyptian cotton. These cottons are

---

[2] "³Staple 6(b)"  www.merriam-webster.com/dictionary/staple (last visited October 1, 2017).

<div align="center">3</div>

renowned for their superior quality thanks to the length of their fibers.

**Length Equals Strength**

So why are long and extra-long staple cottons so desirable? Because the longer the cotton fiber, the stronger, softer, and more durable the resulting fabric.

Fabrics made of long-staple cottons fray less, pill less, wrinkle less, and even fade less than fabrics made with their short-staple counterparts. This difference is especially important when selecting bedding, as it endures daily use over a longer period of time than almost any other type of cotton product. Long-staple cotton sheets will feel luxurious longer, leading to a more comfortable night's sleep for years to come.

**Beware of Blending**

Long-staple cottons have become synonymous with superior quality. Sometimes, however, what you see on the label may not match what you find in the actual product. Dishonest manufacturers may blend their long-staple cottons with cheaper, short-staple ones in an effort to cut costs. The result is an impure cotton product sold at a premium markup, ***and it's unsuspecting consumers who pay the price.***

www.pimacott.com/blog/whats-so-great-about-extra-long-staple-cotton (last visited October 1, 2017) (emphasis added).

6. Length of cotton fibers affect pricing. Thus, there are regulatory and industry standards for what may truthfully and honestly be sold as "pima cotton." The regulatory standard for the fiber length of American pima cotton is found in 7 CFR 28.304. Since August 1, 1961, the standard staple length for American pima cotton has been 1 5/16[th] inch, as a decimal that is 1.3125 inches. Recall that the Product at issue in this case represented that all of the pima cotton in the product was grown in the San Juaquin valley of California; thus, the appropriate standard is that for American pima cotton.

7.   Participants in the cotton trade have also established industry standards for what staple

length constitutes pima cotton.  The following industry standard for ELS cotton is

recognized:

> The remainder of the domestic cotton crop is extra-long staple (ELS),
> or American Pima, cotton. In the United States, ELS cotton is
> grown in Arizona, California, New Mexico, and Texas, although
> nearly 90 percent was produced in California during MY 1999.
> ***Staple lengths for ELS cotton range from 1-1/4 inches to more
> than 1-1/2 inches, but typically 90 percent of bales have staple
> lengths of 1-7/16 inches or more.***

Indus. & Trade Summary Cotton, USITC Pub. No. 3391 (U.S. Intern. Trade Com'n 2001)

(emphases added footnotes omitted).

8.   The importance of the honest and truthful disclosure of information about the fiber

content of textile products prompted Congress to pass the Textile Fiber Product

Identification Act.  15 USC §70-70k (West) (hereinafter "TFPIA").  The TFPIA requires

that the fiber content information, regarding both the type of fiber and the percentage

content of each fiber, in the Product be honestly and truthfully disclosed on the labeling

and on a fiber content tag sewn onto the Product.  *Id.* at §70b(b)(1)-(2); §70b(e).

Moreover, the TFPIA requires that the manufacturer or other entity responsible for

compliance with section 70a of the TFPIA also be identified on the fiber content tag and

label of the Product.  As evident from **Exhibit 1** and **Exhibit 2**, the fiber content tag

states: "100% pima cotton" and identifies a "RN" number of 100350.  When the fiber

content tag states the textile product is "100%" of a certain fiber, the law requires the

textile product to be exactly 100% of that fiber.  16 CFR §303.43(c).  In circumstances in

which a RN number in included on the fiber content tag that RN number identifies the

entity responsible for compliance with section 70a of the TFPIA. 16 CFR §303.20

(West); 15 USC §70b(e) (West).  The RN number 100350 was issued to Bed Bath & Beyond Corporation.  https://rn.ftc.gov/Account/BasicSearch (last visited October 1, 2017).  The label also represents the fiber content as "100% pima cotton" and "RN100350."  On these indisputable facts Defendant is responsible under the TFPIA for the representation that the Product contains "100% pima cotton."

9. The TFPIA states in unequivocal terms:  "[A] textile fiber product shall be misbranded if it is falsely or deceptively stamped, tagged, labeled, invoiced, advertised, or otherwise identified as to the name or amount of constituent fibers contained therein." 15 U.S.C.A. §70b(a) (West).  Section 70a of the TFPIA states as follows:

> The introduction, delivery for introduction, manufacture for introduction, sale, advertising, or offering for sale, in commerce, or the transportation or causing to be transported in commerce, or the importation into the United States, of any textile fiber product which is misbranded or falsely or deceptively advertised within the meaning of this subchapter or the rules and regulations promulgated thereunder, ***is unlawful, and shall be*** **an unfair method of competition and an** ***unfair and deceptive act or practice in commerce under the Federal Trade Commission Act.***

*Id.* at §70a(a) (emphasis added); see also §70a(b)-(c).

10. Importantly also the TFPIA requires:  "Every manufacturer of textile fiber products subject to this subchapter shall maintain proper records showing the fiber content as required by this subchapter of all such products made by him, and shall preserve such records for at least three years."  *Id.* at §70d  Even if Defendant attempts to contest its status as the manufacturer the regulations implementing the TFPIA leave no doubt that Defendant remains responsible for the representations on the label and fiber content tag of the Product:

> Any person marketing or handling textile fiber products who shall cause or direct a processor or finisher to label, invoice, or otherwise

identify any textile fiber product with required information shall be responsible under the Act and regulations for any failure of compliance with the Act and regulations by reason of any statement or omission in such label, invoice, or other means of identification utilized in accordance with his direction: Provided, That nothing herein shall relieve the processor or finisher of any duty or liability to which he may be subject under the Act and regulations.

16 CFR 303.2 (West).  Failure of Defendant to maintain the required records is itself an unfair or deceptive act or practice as a matter of law: "The neglect or refusal to maintain or preserve the records required by this section is unlawful, ***and any person neglecting or refusing to maintain such records shall be guilty of** **an unfair method of competition, and an unfair or deceptive act or practice, in commerce, under the Federal Trade Commission Act***." 15 U.S.C.A. § 70d(c) (West) (emphasis added).

11. On March 23, 2017, Plaintiff purchased the Product from Defendant through www.bedbathandbeyond.com.  The purchase documentation is attached as **Exhibit 3.**  Plaintiff purchased the Product for her personal family and household use.  Plaintiff has been a consumer of bedding products in the past and will continue to be a consumer of bedding products in the future.  Without testing of the product after purchase, it is not possible for a consumer to know if the representations about fiber content on a textile product label or a textile product fiber content tag are true or false.  It is for this reason that Plaintiff seeks the intervention of the Court and seeks the legal, declaratory and equitable relief requested in this First Amended Complaint.  The equitable and declaratory relief will benefit Plaintiff and all consumers in the future.

12. Plaintiff was induced to buy the Product by the words "100 % pima cotton." Plaintiff and consumers purchased the premium priced Product in lieu of the less expensive products, for the purpose of obtaining a higher quality product. Plaintiff and consumers expected to

7

and did purchase what they believed were premium pima cotton pillowcases.  Plaintiffs

and the putative class did not receive the benefit of their bargain.

13. The representation that the Product contained "100% pima cotton" was also material to

the Plaintiff because Plaintiff and, on information and belief, many consumers are

concerned with textile allergies suffered by themselves or their family members.  Both

the type of textile fiber as well as any chemical additives to which the fibers have been

exposed can be a cause of allergic dermatitis.

14. Testing of the Product after Plaintiff's purchase revealed that the Product did not contain

"100% pima cotton," rendering Defendants representations on the Product label and

Product fiber content tag an unfair and deceptive trade practice and unfair method of

competition under the TFPIA.  Plaintiff has attached the test results as **Exhibit 2** and

incorporates those test results into this First Amended Complaint for all purposes.  The

testing was done pursuant to ASTM method D5103, by an ISO 9000 certified lab.  The

purpose of the test was to determine the length of the cotton fibers used to manufacture

the Product.  As established in the paragraphs above, one requirement for cotton to be

truthfully and honestly labeled "pima cotton" is that the cotton meet certain staple length

standards.  Comparing the test results to the staple length standards for pima cotton

shows that only 2% of the cotton used to manufacture the Product was pima cotton.

15.  Significantly, also the testing showed that over 25% of the fibers used to manufacture the

Product were shorter than ½ inch.  Approximately 98% of the fibers used to manufacture

the Product were shorter than required to be called pima cotton. These short fibers are not

the premium "pima cotton" promised by Defendant. The ½ inch or shorter fibers are

often a cheaper byproduct of processing cotton seeds and are sometimes called linters.  It

is possible these fibers too short to legally be called pima cotton came from the plant *gossypium barbadense* and thus share DNA with pima cotton, but because these fibers are too short to meet the legal standard to be called pima cotton, DNA testing cannot establish those short fiber's status as pima cotton.  Likewise, DNA testing cannot establish the country in which these fibers were grown.

16. Defendant's false and misleading representations and omissions violate state and federal law, including Florida's Deceptive and Unfair Trade Practices Act and the TFPIA as detailed below.  Defendant's actions also justify the equitable and declaratory relief requested by Plaintiff as detailed below.

## II.    JURISDICTION AND VENUE

17. This Court has subject matter jurisdiction because it is a class action arising under 28 U.S.C. § 1332(d), which, under the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (2005), explicitly provides for the original jurisdiction of the Federal Courts of any class action in which any member of the Plaintiff class is a citizen of a state different from any Defendant, and in which the matter in controversy exceeds in the aggregate the sum of $5,000,000, exclusive of interest and costs.

18. On information and belief, Plaintiff alleges that the total claims of individual class members in this action are in excess of $5,000,000 in the aggregate, exclusive of interest and costs, as required by 28 U.S.C. § 1332(d)(2) and (5). Plaintiff is a citizen of the State of Florida, as set forth below, and Defendant is a citizen of New York and New Jersey. Therefore, diversity of citizenship exists under CAFA as required by 28 U.S.C. §

1332(d)(2)(A).

19. Furthermore, Plaintiff alleges that the total number of members of the proposed Plaintiff Class is greater than 100, pursuant to 28 U.S.C. § 1332(d)(5)(B).

20. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, because Plaintiff's claims arise under the Constitution, laws, or treaties of the United States. Specifically, the interpretation of the TFPIA and its implementing regulations are central to all of the claims made by Plaintiff.  The need to interpret the TFPIA and its regulations give rise to a federal question.

21. In the alternative, this Court has subject matter jurisdiction of claims not raising a federal question directly pursuant to 28 U.S.C. § 1367.

22. Venue in this district is proper pursuant to 28 U.S.C. §1391(b) because Defendant conducts business within, may be found in, and is subject to personal jurisdiction in this judicial district, and Plaintiff resides in and purchased the Product that is the subject of this action in this judicial district.

### III.    PARTIES

23. Plaintiff Candace Hardy is an individual consumer over the age of 18. She resides and is domiciled in Miami-Dade County, Florida and, thus, is a citizen of Florida. Plaintiff purchased the Product at www.bedbathandbeyond.com and received the Product at her residence. Plaintiff seeks declaratory and injunctive relief and damages on behalf of herself and the Class, and respectfully requests a jury trial on damage claims.

24. Defendant Bed Bath & Beyond, Inc. is incorporated in New York and maintains its

principle place of business at 650 Liberty Avenue, Union, New Jersey.[3] Therefore,

Defendant is a citizen of New York and New Jersey.  Defendant has appeared through

counsel in this action.

## IV.    FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

25. Plaintiff incorporates her allegations in Paragraphs 1-24 above as if set out fully here.

26. Pima cotton comprises a small fraction of total cotton grown.  The long fibers of pima

cotton render it more desirable because yarns from pima fibers can be spun finer, yielding

softer fabrics and textiles. In contrast, the majority of cotton is called "upland" cotton and

cannot be spun as finely.[4]  In addition, the superior strength of pima cotton fibers renders

its resulting fabrics more durable and resistant to stress, while its ability to absorb liquids

gives fabrics a richer, deeper color.[5]

27. Plaintiff purchased the Product because it was labeled "100% pima cotton."

28. Plaintiff believed the "100% pima cotton" representation meant that the Product

contained only pima cotton as represented and advertised.  However, test results indicate

that the Product contains approximately 2% pima cotton, the rest being composed of

---

[3] BBB 10K at 1.

 [4] "16 Facts About Cotton You Don't Know," Barnhardt Natural Fibers Group, April 26 2016,
https://www.barnhardtcotton.net/blog/16-facts-about-cotton-that-you-dont-know/.

[5] "Facts and General Information,"Swicofil, March 28 2017,
http://www.swicofil.com/products/001cotton.html (2015); *See also* "Peruvian Pima Cotton,"
April 8 2017,
**http://www.peruvianconnection.com/category/fiber+and+product+information/peruvian+p
ima+cotton.do** ; *See also* Bed Bath and Beyond, Inc.

inferior quality cotton and cotton linters.  Cotton linters are short fibers of ½ inch or less.

29. Obviously, a product containing only 2% pima cotton clearly is not "100% pima cotton," and Defendant's advertising and labeling is deceptive and likely to mislead the public as a result. Plaintiff and class members would not have purchased the Product if they had known that the "100% pima cotton" representation about the Product is false.

30. In purchasing the Product, Plaintiff saw, read, and relied on the packages and advertising for the Product claiming to be "100% pima cotton." Plaintiff and class members have been damaged by their purchase of the Product because the labeling and advertising for the Product was and is deceptive and misleading; therefore, the Product is worth less than what Plaintiff paid for it, and Plaintiff and class members did not receive what they reasonably intended to receive, which was a product that was "100% pima cotton."

31. Plaintiff and Class members purchased the Product because they believed that the Product was "100% pima cotton."  If Plaintiff had known that the Product contained only 2% pima cotton, Plaintiff would not have purchased the Product.

32. In addition to the inferior quality of the actual Product, another reason the "100% pima cotton" representation was material to Plaintiff was that the Product could pose a potential threat to her, her family and other consumers with textile allergies because both the type of textile fibers used as well as the chemicals they have been exposed to can be a cause of allergic dermatitis.[6]  Pima cotton is hand-picked and often advertised as safe for sensitive skin because of its hypoallergenic attribute.[7]

---

[6] Alex Reis, PhD. "Synthetic Fabrics and Allergies," BeyondAllergy.com, March 28 2017, http://www.beyondallergy.com/skin-allergies/synthetic-fabrics-and-allergies-3.php.

[7] "5 Reasons Why Pima Cotton is Better Than Regular Ol' Cotton," Noble Carriage, August 17 2016, https://noblecarriage.com/blogs/news/why-organic-pima-cotton.

33. At a minimum, Plaintiff and Class Members contend that Defendant should cease labeling the Product "100% pima cotton" or alternatively, that Defendant should include only pima cotton in its Product.

## V.     CLASS ALLEGATIONS

34. Plaintiff re-alleges and incorporates by reference all allegations set forth above.

35. Plaintiff brings this class action pursuant Federal Rule of Civil Procedure 23 and seeks certification of the claims and certain issues in this action pursuant to Federal Rule of Civil Procedure 23(a),  (b)(2), and (b)(3) on behalf of the following individuals:

All Florida residents who purchased Wamsutta Dream Zone 1000 Thread Count 100% Pima Cotton Pillow Cases (the "Product") from Defendant Bed Bath & Beyond, Inc. ("Defendant") in the state of Florida from the four years preceding the filing of this complaint to present ("Class Period").

Excluded from the Class are Defendant and any officer, director, employee, legal counsel, firm, trust, corporation, or other entity related to or affiliated with Defendant and the members of the judiciary and their office staff to whom this case may be assigned.

36. Defendant's practices and omissions were applied uniformly to all members of the Class, so that the questions of law and fact are common to all members of the Class. All members of the Class were and are similarly affected by having purchased the Product represented to be 100% pima cotton but in fact containing only approximately 2% pima cotton.

37. On information and belief, Plaintiff alleges that the Plaintiff Class is so numerous that joinder of all members would be impractical. Based on the annual sales of Defendant and the popularity of the Product, on information and belief, Plaintiff alleges that the number of consumers of the Product would at least be in the many thousands, thereby making joinder impractical.

38. Questions of law and fact common to the Plaintiff and the Class exist that predominate over questions affecting only individual members, including, *inter alia*:

   a. Whether Defendant's representation that the Product contained 100% pima cotton was deceptive or unfair in any respect, thereby violating the Florida Deceptive and Unfair Trade Practices Act, *inter alia*, sections 501.201 to 201.213, *Florida Statutes*;

   b. Whether the Product contains less than "100% pima cotton";

   c. Whether Defendant's manufacturing, label, tagging, advertising or sale of the Product violates the TFPIA;

   d. Whether Defendant's conduct as set forth above injured consumers and if so,  the extent of the injury; and

   e. Whether Plaintiffs are entitled to a declaratory judgment as a result of Defendant's practices.

39. The claims asserted by Plaintiff in this action are typical of the claims of the members of the Plaintiff Class, as the claims arise from the same course of conduct by Defendant, and the relief sought is common.

40. Plaintiff will fairly and adequately represent and protect the interests of the members of the Plaintiff Class. Plaintiff has retained counsel competent and experienced in both

14

consumer protection and class action litigation.

41. Certification of this class action is appropriate under Federal Rule of Civil Procedure 23(b)(3) because the questions of law or fact common to the respective members of the Class predominate over questions of law or fact affecting only individual members. This predominance makes class litigation superior to any other method available for the fair and efficient adjudication of these claims.

42. Absent a class action, it would be highly unlikely that the representative Plaintiff or any other members of the Class would be able to protect their own interests because the cost of litigation through individual lawsuits might exceed expected recovery.

43. Certification is also appropriate under Federal Rule of Civil Procedure 23(b)(2), because Defendant acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

44. Further, given the large number of class members, allowing individual actions to proceed in lieu of a class action would run the risk of yielding inconsistent and conflicting adjudications.

45. A class action is a fair and appropriate method for the adjudication of the controversy, in that it will permit a large number of claims to be resolved in a single forum simultaneously, efficiently, and without the unnecessary hardship that would result from the prosecution of numerous individual actions and the duplication of discovery, effort, expense and burden on the courts that such individual actions would engender.

46. The benefits of proceeding as a class action, including providing a method for obtaining redress for claims that would not be practical to pursue individually, outweigh any

difficulties that might be argued with regard to the management of this class action.

## VI.   FIRST CAUSE OF ACTION: VIOLATION OF FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, FLA. STAT. §§ 501.201, *ET SEQ.*

47. Plaintiff re-alleges and incorporates by reference verbatim the allegations set forth in the preceding paragraphs.

48. This cause of action is brought pursuant the Florida Deceptive and Unfair Trade Practices Act, Sections 501.201 to 501.213, *Florida Statutes*. The express purpose of the Act is to "protect the consuming public...from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce" Section 501.202(2).

49. The sale of the Product at issue in this cause was a "consumer transaction" within the scope of the Florida Deceptive and Unfair Trade Practices Act, Sections 501.201 to 501.213, *Florida Statutes*.

50. Plaintiff is a "consumer" as defined by Section 501.203, *Florida Statutes*. The Product is a "good" within the meaning of the Act. Defendant is engaged in trade or commerce within the meaning of the Act.

51. Section 501.204(1), *Florida Statutes* declares as unlawful "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce".

52. Defendant has violated the Act by engaging in the unfair and deceptive practices described above, which offend public policies and are immoral, unethical, unscrupulous and substantially injurious to consumers. Specifically, Defendant has represented its

16

Product as containing only premium quality "100% pima cotton" when in fact the Product contains far less than 100% pima cotton as evidenced by the test report attached as **Exhibit 2**, which test report found very little cotton with a staple length that would qualify that cotton to legally be called "pima cotton."

53. Plaintiff and Class Members have been aggrieved by Defendant's unfair and deceptive practices in that they purchased Defendant's Product.

54. A reasonable consumer necessarily relies on those that manufacture, arrange for the manufacture and sell their proprietarily branded products to honestly represent the true nature of their products.

55. As described in detail above, Defendant has represented that its Product is "100 % pima cotton"' when in fact it is not.

56. This conduct is a violation of the TFPIA which is a deceptive and unfair trade practice as a matter of law.

57. On information and belief Defendant lacks records, required by law, containing reliable scientific evidence showing that at each stage of processing of the Product that the fiber that went into the Product was "100% pima cotton." Defendant's lack of such evidence, required by the TFPIA, is itself an independent unfair and deceptive trade practice as a matter of law.

58. The knowledge required to discern the true nature of Defendant's Product -- namely that the Product contains large numbers of inferior fibers mixed with a small number of pima cotton fibers, which is contrary to the "100% pima cotton" claim on the label--is beyond that of the reasonable consumer.

59. The damages suffered by the Plaintiffs and the Class are directly and proximately caused

by the deceptive, misleading and unfair practices of Defendant, as described above.

60. In addition, Section 501.204(2), *Florida Statutes* states that "due consideration be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a)(1) of the Trade Commission Act". Defendants' unfair and deceptive practices are likely to mislead – and have misled – the consumer acting reasonably under the circumstances and, therefore, violate § 501.204, Florida Statutes , because the Product is misbranded under the TFPIA.  Defendant's conduct, as alleged above, with respect to such Product therefore constitutes an unfair method of competition and an unfair and deceptive practice under the TFPIA.

61. The Federal Trade Commission ("FTC") has clearly stated that "[i]f you advertise or sell clothing or household items containing cotton, the product labels must reflect the fabric content accurately." [8] The FTC has further specified that the fiber disclosure may include the name of a type of cotton, *as long as* the name is truthful and not deceptive.  The FTC even states as an example, that "[y]ou can label a shirt '100% Pima Cotton' as long as the garment contains 100% Pima cotton fibers." [9]

62. Defendant is a "person" as defined by 15 U.S.C. §70.

63. Pima Cotton is a "textile fiber" as defined by 15 U.S.C. § 70.

64. The Product is a "textile fiber product" as defined by 15 U.S.C. §70.

---

[8] "Calling It Cotton: Labeling and Advertising Cotton Products," Federal Trade Commission, July 2014, https://www.ftc.gov/tips-advice/business-center/guidance/calling-it-cotton-labeling-advertising-cotton-products.

[9] "Threading Your Way Through the Labeling Requirements Under the Textile and Wool Act," Federal Trade Commission, July 2014, https://www.ftc.gov/tips-advice/business-center/guidance/threading-your-way-through-labeling-requirements-under-textile#premium.

65. 15 U.S.C. § 70a(a) provides, "[t]he introduction, delivery for introduction, manufacture for introduction, sale, advertising, or offering for sale, in commerce, or the transportation or causing to be transported in commerce, or the importation into the United States, of any textile fiber product which is misbranded or falsely or deceptively advertised within the meaning of this subchapter or the rules and regulations promulgated thereunder, is unlawful, and shall be an unfair method of competition and an unfair and deceptive act or practice in commerce under the Federal Trade Commission Act (15 U.S.C. § 41 *et seq.*).

66. 15 U.S.C. § 70a(b) provides, "[t]he sale, offering for sale, advertising, delivery, transportation, or causing to be transported, of any textile fiber product which has been advertised or offered for sale in commerce, and which is misbranded or falsely or deceptively advertised, within the meaning of this subchapter or the rules and regulations promulgated thereunder, is unlawful, and shall be an unfair method of competition and an unfair and deceptive act or practice in commerce under the Federal Trade Commission Act (15 U.S.C. § 41 *et seq.*).

67. 15 U.S.C. §70a(c)  provides, "[t]he sale, offering for sale, advertising, delivery, transportation, or causing to be transported, after shipment in commerce, of any textile fiber product, whether in its original state or contained in other textile fiber products, which is misbranded or falsely or deceptively advertised, within the meaning of this subchapter or the rules and regulations promulgated thereunder, is unlawful, and shall be an unfair method of competition and an unfair and deceptive act or practice in commerce under the Federal Trade Commission Act (15 U.S.C. § 41 *et seq.*).

68. 15 U.S.C. §70b(a) provides that "a textile fiber product shall be misbranded if it is falsely or deceptively stamped, tagged, labeled, invoiced, advertised, or otherwise identified as

to the name or amount of constituent fibers contained therein.

69. Accordingly, Defendant's labelling violates 15 U.S.C. § 70a, and is therefore an unfair method of competition and an unfair and deceptive act or practice that violates the FTC Act, and therefore violates the Florida Deceptive and Unfair Trade Practices Act.

70. Pursuant to Section 501.211(1), *Florida Statutes*, Plaintiff and the Class seek a declaratory judgment and court order enjoining the above described wrongful acts and practices of the Defendant and for restitution and disgorgement.

71. Additionally, pursuant to §§ 501.211(2) and 501.210(5), *Florida Statutes*, Plaintiff and the Class make claims for damages, as well as reasonable attorney's fees and costs.

## VII.    SECOND CAUSE OF ACTION: DECLARATORY JUDGMENT

72. Plaintiff re-alleges and incorporates by reference verbatim the allegations set forth in the preceding paragraphs.

73. Defendant has represented on its label that its Product is "100% pima cotton" when Plaintiff contends and Plaintiff's testing shows that the Product contains only about 2% pima cotton.

74. Thus, a dispute has arisen between the parties concerning the honesty and accuracy of Defendant's labeling.  As set forth above, Plaintiff and those similarly situated contend that Defendant's labeling is false and deceptive and illegal.  Plaintiff is informed and believes that Defendant contends that it is entitled to market the Product as labeled.

75. Plaintiff and the members of the Class seek a declaratory judgment, pursuant to the Federal Declaratory Judgments Act, 28 U.S.C. §§ 2201 *et seq*, *Federal Rule of Civil*

*Procedure* 57,  the TFPIA, and Section 501.211 *Florida Statues* finding that the Product

is misbranded and illegally labeled, tagged, advertised and marketed.  In requesting this

declaratory relief, Plaintiff and class members are requesting an interpretation of the

rights, legal status and relationships of the parties under the above law and facts.

**76.** Such interpretation is appropriate under the provisions of the Federal Declaratory

Judgments Act, 28 U.S.C. §§ 2201 *et seq.* and *Federal Rule of Civil Procedure* 57, the

TFPIA, and Section 501.211 *Florida Statues*.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of herself and all others similarly situated, prays for

relief, jointly and severally pursuant to each cause of action set forth in this Complaint as

follows:

1.      For an order certifying that the action may be maintained as a class action and

Plaintiff's counsel be appointed as Class Counsel and Plaintiff be appointed as class

representative;

2.      For an award of equitable relief as follows:

a. An order enjoining Defendant from continuing to engage, use, or employ any

unfair and/or deceptive business acts or practices related to the design, testing,

manufacture, assembly, development, marketing and advertising of the Product for

the purpose of selling the Product in such manner as set forth in detail above;

b. Disgorging all monies that may have been acquired by Defendant as a result of
such unfair and/or deceptive act or practices; and

    c.  Requiring Defendant to disgorge all ill-gotten gains flowing from the conduct described herein.

3.    For a Declaratory Judgment as specified above;

4.    For actual damages in an amount to be determined at trial;

5.    For an award of attorney's fees and costs;

6.    For pre- and post-judgment interest on any amounts awarded; and

7.    For any other award the Court might deem just, appropriate, or proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all issues so triable.

**Dated: October 2, 2017**

        **Respectfully Submitted,**

        By: /s/ *Angela Arango-Chaffin*
            Angela Arango-Chaffin, Esq.
            Fla. SBN: 87919
            angela@chaffinlawfirm.com
            540 West Avenue, Suite 1113
            Miami Beach, FL. 33139
            (713) 818-2515
        *Attorney for Plaintiff CANDACE HARDY and the Proposed Class*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on October 2, 2017, this document was electronically filed with the Clerk of the Court using the CM/ECF system which in turn will serve a copy by electronic mail to all counsel of record.


/s/ *Angela Arango-Chaffin*
Angela Arango-Chaffin, Esq.