UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 17-cv-22315-RNS

CANDACE HARDY, individually and on
behalf of others similarly situated,

    Plaintiff,

vs.

BED BATH & BEYOND, INC.,

    Defendant.
_____/

**DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT**

Defendant Bed Bath & Beyond, Inc. ("BB&B") moves to dismiss Plaintiff's amended complaint [DE 14] pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6).

**I.    INTRODUCTION**

If Plaintiff was unhappy with her purchase of BB&B's Wamsutta Dream Zone 1,000 Thread Count PimaCott Pillowcases (the "PimaCott Pillowcases"), she could have returned the product for a full refund—and still can. *See* [DE 14-3 at 3.] Instead, having suffered no injury, she decided to bring a class action complaint on the false and unsupportable premise that the PimaCott Pillowcases are not 100% Pima cotton, a premium species of cotton. The purported basis for the lawsuit is an $88.00 "test" commissioned by a disbarred attorney attempting to exact a settlement.[1] The test, however, is not capable of identifying the species of cotton used in a finished product. The sole basis of the complaint is flawed.

---

[1] Howard W. Rubinstein, Esq. commissioned the "test" that provides the basis for Plaintiff's claims. [DE 14-2.] Mr. Rubinstein's disciplinary history includes disbarment from practice in the Southern District of Florida and temporary suspension from the practice of law by the Florida Supreme Court. *See* S.D. Fla. Admin. Order 2015-69; *Fla. Bar v. Rubinstein*, No. SC15-195, 2016 WL 1168253 (Fla. Mar. 24, 2016).

Plaintiff's complaint must be dismissed for lack of subject-matter jurisdiction and failure to state a claim. First, Plaintiff fails to establish subject-matter jurisdiction for claims related to "textile allergies," for alleged mislabeling, and for prospective relief. She lacks standing for claims based on "textile allergies" because she has not suffered any allergic reaction. She lacks standing for any claims based on representations on the label, tag, or packaging of the PimaCott Pillowcases because she made an <u>online</u> rather than in-store purchase. And she lacks standing to assert a claim for declaratory or injunctive relief because she fails to allege any threat of a future injury.

Second, Plaintiff fails to state a claim upon which relief can be granted. Pervading Plaintiff's claims is a failure to plausibly plead that the PimaCott Pillowcases Plaintiff purchased were not 100% Pima cotton. This is because the test Plaintiff allegedly relies upon—the ASTM D5103 test method—is not, and does not purport to be, a test that can determine the species of natural cotton contained in a finished end-product, such as the PimaCott Pillowcases. Because Plaintiff relies solely on an inapposite test to support her claims, her claims lack any plausible basis. Plaintiff also fails to state a FDUTPA claim on the independent grounds that: (1) she fails to allege any facts demonstrating that BB&B had actual knowledge that the "100% Pima Cotton" representation was false (it wasn't) and (2) she fails to plead that any alleged violation caused actual damages under FDUTPA. Accordingly, the amended complaint must be dismissed in its entirety.

## II.   ALLEGED FACTS

BB&B is a retailer that sells domestic merchandise and home furnishings through its retail stores and on its website, including the PimaCott Pillowcases. [DE 14 ¶¶ 1–2.] On March 23, 2017, Plaintiff Candace Hardy ordered a set of such pillowcases from BB&B on its website.

[*Id.* ¶ 11.] Plaintiff does not allege that she made any in-store purchase or otherwise saw any label, tag, or packaging before she made her purchase. Instead, Plaintiff claims that when she purchased the pillowcases she relied on a representation on BB&B's website that the PimaCott Pillowcases contain 100% Pima cotton, which is a premium species of cotton.[2] [*Id.* ¶¶ 3–4.]

According to Plaintiff, testing of the PimaCott Pillowcases "revealed" that they contain only 2% Pima cotton. [*Id.* ¶ 14.] The sole basis for this allegation is Plaintiff's reliance on the ASTM D5103 fiber length and distribution test method. [*Id.* ¶ 14; DE 14-2.] Plaintiff claims that the alleged misrepresentation of 100% Pima cotton is significant because "Plaintiff and, on information and belief, many consumers are concerned with textile allergies suffered by themselves or their family members"—though Plaintiff does not allege that she herself actually has any textile allergies or suffered any allergic reaction to the pillowcases. [DE 14 ¶ 13.] Significantly, Plaintiff never alleges that BB&B had actual knowledge that the PimaCott Pillowcases do not contain 100% Pima cotton, and she cannot because the pillowcases are 100% Pima cotton).

Plaintiff's amended complaint against BB&B asserts claims for violation of the Florida Deceptive and Unfair Trade Practices Act (FDUTPA), and seeks declaratory judgment. Plaintiff purports to represent a statewide class of consumers who purchased the pillowcases in Florida. [DE 1 ¶ 35.]

---

[2] To manufacture the appearance of merit to her claims, Plaintiff misrepresents to the Court that BB&B altered its website to remove the "100% Pima Cotton" representation after Plaintiff filed this lawsuit. [DE 14 ¶ 3.] Plaintiff's representation is demonstrably false. The "100% Pima Cotton" representation remains on BB&B's website and has never been removed—because it's true. *See Wamsutta® Dream Zone® 1000-Thread-Count PimaCott® Pillowcases*, Bed Bath and Beyond, Inc. (2017) https://www.bedbathandbeyond.com/store/product/wamsutta-reg-dream-zone-reg-1000-thread-count-pimacott-reg-pillowcases-set-of-2/3295810.

### III. ARGUMENT

#### A. The Court Lacks Subject-Matter Jurisdiction Over Several Claims.

##### 1. Plaintiff Lacks Standing to Assert Claims Based on Allergies.

Plaintiff lacks standing to assert claims based on allergic reactions because she fails to allege that she ever suffered such an allergic reaction or even has any "textile allergies."[3] It is not enough for Plaintiff to allege that some other consumer could have such allergies because, even though she filed a putative class action, Plaintiff must personally have standing as to <u>each</u> claim.

"Where, as here, a case is at the pleading stage, the plaintiff must '<u>clearly</u> . . . allege facts demonstrating' each element" of standing. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (alteration in original) (emphasis added). Moreover, a proposed class representative must personally have standing as to <u>each</u> of the class claims. *Wooden v. Bd. of Regents of the Univ. Sys.*, 247 F.3d 1262, 1287–88 (11th Cir. 2001); *id.* at 1283 n.20 ("[T]he fact that this suit was brought as a class action does not alter Tracy's obligation to show that he <u>individually</u> satisfies

---

[3] With deliberate ambiguity, Plaintiff states: "The representation that the Product contained "100% pima cotton" was also material to the Plaintiff because Plaintiff and, on information and belief, many consumers are concerned with textile allergies suffered by themselves or their family members." [DE 14 ¶ 13.] Notably, this does not specifically state that Plaintiff herself has any textile allergies. Rather, it is wholly unclear whether Plaintiff is stating that she is concerned about allergies suffered by herself <u>or</u> her unspecified family members. This is intentional. In BB&B's motion to dismiss the initial complaint, BB&B argued that Plaintiff lacked standing to assert claims for allergies because there was no allegation that Plaintiff herself had allergies. Plaintiff has now added this new allegation in a transparent attempt to manufacture standing. But Plaintiff's inability to affirmatively state in good faith that she actually has textile allergies has resulted in this purposefully cryptic allegation, which is the best Plaintiff can do. Despite Plaintiff's stratagem, this is still insufficient for Plaintiff to meet her burden of establishing standing. "Where, as here, a case is at the pleading stage, the plaintiff must '<u>clearly</u> . . . allege facts demonstrating' each element" of standing. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (alteration in original) (emphasis added). It is also worth noting that the sources Plaintiff relies on to support her vague "allergy" allegations are inapposite. The sources suggest that allergy sufferers should use products with natural fibers such as cotton, rather than synthetic fibers which might cause allergies. Yet, Plaintiff does not and cannot allege that the pillowcases contain synthetic fibers.

the constitutional requirements of standing." (emphasis added)). "[The] individual injury requirement is not met by alleging 'that injury has been suffered by other, unidentified members of the class … and a claim cannot be asserted on behalf of a class unless at least one named plaintiff has suffered the injury that gives rise to that claim." *Griffin v. Dugger*, 823 F.2d 1476, 1483 (11th Cir. 1987); *see also Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279–80 (11th Cir. 2000).

The first element of the "irreducible constitutional minimum" of standing is that the plaintiff must have "suffered an injury in fact." *Spokeo*, 136 S. Ct. at 1547. An injury in fact is "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548. "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way." *Id.* "It is not enough that the conduct of which the plaintiff complains will injure *someone*. The complaining party must also show that he is within the class of persons who will be concretely affected." *Blum v. Yaretsky*, 457 U.S. 991, 999 (1982). "A 'concrete' injury must be '*de facto*'; that is, it must actually exist." *Nicklaw v. Citimortgage, Inc.*, 839 F.3d 998, 1002 (11th Cir. 2016).

Plaintiff asserts that the pillowcases "<u>could</u> pose a <u>potential</u> threat to her, her family and other consumers with textile allergies" and that "the type of textile fibers used as well as the chemicals they have been exposed to <u>can be</u> a cause of allergic dermatitis." [DE 14 ¶ 32] (emphasis added). In other words, Plaintiff alleges potential injuries that she surmises <u>another</u> consumer might hypothetically suffer. But whether other consumers may have textile allergies is irrelevant; only <u>Plaintiff's</u> standing is relevant. Plaintiff's hypothetical, non-individualized allegations are paradigmatic of claims that are routinely dismissed for lack of standing.

Plaintiff fails to allege an injury in fact because she has not alleged that she had an

allergic reaction to the pillowcases. She fails to plead an injury that is "actual or imminent" rather than conjectural or hypothetical. Plaintiff also fails to plead an injury that is "particularized" because she herself has not suffered the alleged injury. Nor is the injury "concrete." Plaintiff does not allege that <u>anyone</u> has suffered the injury. Plaintiff thus lacks standing to assert the alleged claims.

Even if Plaintiff had alleged that she has allergies or suffered an allergic reaction (she has not), Plaintiff would still lack standing because her complaint contains no facts demonstrating that such an injury is fairly traceable to BB&B's alleged misrepresentations. *See Spokeo*, 136 S. Ct. at 1547 ("Our cases have established that the 'irreducible constitutional minimum' of standing consists of three elements. The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant . . . ." (internal citation omitted)). Even if the PimaCott Pillowcases were not 100% Pima cotton (they are), that would not mean that they contain the types of textile fibers and chemicals referred to in Plaintiff's complaint. Plaintiff's complaint is devoid of any allegation that the PimaCott Pillowcases actually contain any allergy-causing fibers or chemicals. As Plaintiff fails to establish any causal connection between the alleged misrepresentation and an "allergy injury," Plaintiff also fails to meet the second element of standing for any claim based on allergies.

### 2. Plaintiff Lacks Standing to Bring Claims Based on Tags or Labels.

Though unclear, it appears Plaintiff attempts to assert claims based on the label, tag, and packaging of the PimaCott Pillowcases rather than merely the online advertisement. *See, e.g.*, [DE 14 ¶¶ 3, 8.] To the extent Plaintiff bases her claim on such labeling as opposed to the online advertisement she allegedly viewed when purchasing the PimaCott Pillowcases, she lacks standing. Plaintiff alleges that she only made an online purchase. Any alleged misrepresentation

on the label, tag, or packaging of the PimaCott Pillowcases—which Plaintiff would only see if she made an in-store purchase as opposed to an online purchase—has no causal link to any alleged injury of Plaintiff capable of satisfying the "fairly traceable" element of standing. *See Azimpour v. Sears, Roebuck & Co.*, No. 15-CV-2798 JLS (WVG), 2017 WL 1496255, at *3–4 (S.D. Cal. Apr. 26, 2017) ("The Court previously found that Plaintiff had, at minimum, 'standing to sue for his alleged injury based solely on the in-store advertisement he relied on in making his pillow purchase.' . . . However, to the extent Plaintiff still seeks to incorporate other media platforms into this case, the Court again finds that Plaintiff fails to adequately plead reliance on online or print advertisements, among possible others, for standing purposes."); *In re Mercedes-Benz Emissions Litig.*, No. CV 16-881 (JLL)(JAD), 2016 WL 7106020, at *8 (D.N.J. Dec. 6, 2016) (holding that plaintiff must base the "fairly traceable" element of standing on the medium of advertising that she viewed when purchasing product). Plaintiff thus lacks standing to assert claims based on the labeling of the PimaCott Pillowcases.

      **3.    Plaintiff Lacks Standing to Seek Injunctive or Declaratory Relief**.

Plaintiff also lacks standing to assert claims for injunctive or declaratory relief because she fails to plead any likelihood of a <u>future</u> injury. "[A] plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought," so "a plaintiff who has standing to seek damages must also demonstrate standing to pursue injunctive relief." *Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1651 (2017). To have standing to pursue prospective relief, "a plaintiff must show a sufficient likelihood that he will be affected by the allegedly unlawful conduct <u>in the future</u>." *Wooden*, 247 F.3d at 1283 (emphasis added). Therefore, "a plaintiff does not have standing to seek prospective injunctive relief against a manufacturer or seller engaging in false or misleading advertising unless there is a likelihood that

the plaintiff would suffer future harm from the defendant's conduct—i.e., the plaintiff is still interested in purchasing the product in question." *Barron v. Snyder's-Lance, Inc.*, No. 13-cv-62496, 2015 WL 11182066, at *10 (S.D. Fla. Mar. 20, 2015) (citation omitted).

Here, Plaintiff fails to allege any likelihood of future injury because she does not allege any intent to purchase the allegedly deceptively-labeled pillowcases in the future. *Id.* at *11 ("[A] consumer fraud Plaintiff seeking to enjoin a manufacturer from deceptively labeling a product cannot establish Article III standing if she is not likely to purchase the 'noncompliant' product in the future."); *In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 757 (C.D. Cal. 2014) ("[A] plaintiff lacks standing if he has not 'express[ed] an intent to purchase the products in the future.'"); *Mason v. Nature's Innovation, Inc.*, No. 12cv3019 BTM(DHB), 2013 WL 1969957, at *4. As a result, the Court lacks subject-matter jurisdiction over Plaintiff's claims for prospective relief.

**B. Plaintiff Fails to State a Claim Upon Which Relief Can Be Granted.**

**1. Plaintiff's Claims Are Based on an Inapplicable Test.**

All of Plaintiff's claims are subject to dismissal because they are based on the conclusory, unsupported assertion that the PimaCott Pillowcases contain only 2% Pima cotton. This assertion fails to meet the plausibility standard articulated in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), because it is based exclusively upon the ASTM D5103 test method,[4] a test that cannot determine the species of cotton used in a

---

[4] *See* Exhibit 1, ASTM D5103-07(2012), Standard Test Method for Length and Length Distribution of Manufactured Staple Fibers (Single-Fiber Test), ASTM International (2012). The Court may judicially notice the ASTM D5103 test, and may consider it without converting this motion to one for summary judgment. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Lozman v. City of Riviera Beach*, 713 F.3d 1066, 1075 n.9 (11th Cir. 2013). Although not attached as an exhibit to the amended complaint, the ASTM D5103 is specifically referenced in the amended complaint and in Exhibit 2 of the amended complaint, and Plaintiff

finished product.

A plaintiff does not sufficiently plead a misrepresentation where she merely alleges in conclusory fashion that a statement is false; instead, a plaintiff must allege specific facts demonstrating the alleged falsity. *See Mazzeo v. Nature's Bounty, Inc.*, No. 14-cv-60580-, 2014 WL 5846735, at *4 (S.D. Fla. Nov. 12, 2014) ("Plaintiff's Amended Complaint similarly fails to allege how 'promotes heart health' is a misrepresentation as a false and misleading claim, other than repeated conclusory assertions that it does not have *any* heart-related benefits."); *4 MVR, LLC v. Warren W. Hill Constr. Co.*, No. 12–10674–DJC, 2013 WL 310290, at *5 (D. Mass. Jan. 25, 2013) (dismissing claim because plaintiff "fails to plead the factual basis that would make it reasonable to determine that the[] representations were false").

Similarly, when an alleged test does not squarely address the specific representation at issue, allegations based on such a test do not satisfy the requisite plausibility standard. *Kardovich v. Pfizer, Inc.*, 97 F. Supp. 3d 131, 138 (E.D.N.Y. 2015) ("As here, where plaintiffs point to scientific studies that they allege actually disprove a product's claims, such a stark disconnect between the scientific studies and the claims made about Centrum's benefits is fatal to plaintiffs' complaint."); *Padilla v. Costco Wholesale Corp.*, No. 11 C 7686, 2013 WL 195769, at *3 (N.D. Ill. Jan. 16, 2013) (dismissing misrepresentation-based claims because plaintiff's cited studies "do[] not have any bearing on the truthfulness of the actual representations"); *Eckler v. Wal-Mart Stores, Inc.*, No. 12-CV-727-LAB-MDD, 2012 WL 5382218, at *6 (S.D. Cal. Nov. 1, 2012) ("[T]the studies on which Eckler relies didn't even test the actual formulation of Equate. If that's true, <u>the studies simply wouldn't show what Eckler claims they do</u>, and the Court would be left

---

cannot hide behind her failure to provide the very test method she both expressly cites and relies upon. Indeed, in addition to judicial notice, the Court may consider the ASTM test method as incorporated by reference. *See Tellabs*, 551 U.S. at 322; *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (per curiam).

with no facts from which to infer that Wal–Mart is liable for false advertising." (emphasis added)).

Plaintiff relies on the ASTM D5103 test method to determine the length distribution of the cotton fibers in the manufactured PimaCott Pillowcases. [DE 14 ¶ 14; DE 14-2.] Based on this length distribution, she concludes that the species of cotton in the pillowcases is not 100% Pima cotton. Plaintiff's conclusion is demonstrably false and misguided.

At the outset, while the ASTM D5103 test may be designed to determine the <u>length distribution</u> of fibers in a product, it is not designed to verify the <u>species</u> of cotton fibers in the product. Nowhere is there any indication in the ASTM D5103 guidelines that the test can be used to verify the species of a fiber, based on its length or otherwise.

Furthermore, Plaintiff's complaint relies on the argument that the cotton in the manufactured Pillowcases is shorter than the standard staple length of American pima cotton as defined by the Code of Federal Regulations ("CFR"), or 1 and 5/16 inches. [DE 14 ¶ 6]. The CFR, however, presumes that the cotton length is being measured using the ASTM D 1440-7 test method, which measures cotton fiber lengths <u>before</u> the manufacturing process. *See* 28 CFR §28.303 ("Length measurements shall be performed in accordance with the 'Standard Test Method for Length and Length Distribution of Cotton Fibers' (Array Method), ANSI/ASTM D 1440–77 (1982)."); *see also* Exhibit 2, ASTM D1440-07(2012) Standard Test Method for Length and Length Distribution of Cotton Fibers (Array Method), ASTM International (2012). Plaintiff instead relies on the ASTM D5103 test to measure the cotton fiber length <u>after</u> the manufacturing process. Because the manufacturing process affects the length of cotton fiber, the ASTM D5103 guidelines specifically warn that the test's measurement "may not represent a fiber's staple length, <u>as manufactured</u>." *See* Exhibit 1, Scope section 1.1 (emphasis added).

In sum, Plaintiff attempts to substantiate her claim that the pillowcases are not 100% Pima cotton by brazenly relying on a test that (i) is <u>not</u> designed to determine the species of cotton, and (ii) is <u>not</u> determinative of the standard length of Pima cotton as defined by the CFR, and which length forms the basis of the complaint.

Because Plaintiff's sole factual support for her otherwise conclusory allegation that the pillowcases contain only 2% Pima cotton is the inapplicable ASTM D5103 test, the allegation is not well pled, is not entitled to an assumption of truth, and is not plausible. Instead, it is speculative and without any factual support, and all the claims must therefore be dismissed. *See Kardovich*, 97 F. Supp. 3d at 138; *Padilla*, 2013 WL 195769, at *3–4; *Eckler*, 2012 WL 5382218, at *4–6.

### 2. Plaintiff Fails to State a FDUTPA Claim (Count I).

Plaintiff's FDUTPA claim fails because she does not allege—and cannot in good faith allege—that BB&B failed to act in good faith and had actual knowledge that it violated FDUTPA. FDUTPA's "retailer exemption" provides: "[D]amages, fees, or costs are not recoverable under this section against a retailer who has, in good faith, engaged in the dissemination of claims of a manufacturer or wholesaler without actual knowledge that it violated this part." Fla. Stat. § 501.211(2). This provision "engrafts a requirement that Defendant violated the act with actual knowledge." *Herazo v. Whole Foods Mkt., Inc.*, No. 14-cv-61909, 2015 WL 4514510, at *3 n.2 (S.D. Fla. July 24, 2015). Accordingly, a FDUTPA claim "is not properly pled under the statute" against a retailer where the "complaint lacks an allegation that Defendant had actual knowledge it was violating the act." *Id.* Here, Plaintiff acknowledges that BB&B is a retailer rather than the manufacturer of the PimaCott Pillowcases. [DE 14 ¶ 1.] Yet, Plaintiff fails to allege any facts demonstrating that BB&B had actual knowledge that the "100% Pima Cotton" representation was false. This failure is fatal to Plaintiff's FDUTPA claim. *Herazo*,

2015 WL 4514510, at *3 n.2.

Plaintiff's Amended Complaint seeks to circumvent FDUTPA's retailer exemption by arguing that BB&B is responsible for its representations under the Textile Fiber Product Identification Act. But the TFPIA is enforceable only by the federal government, "and it does not provide for a private right of action." *Beautiful Home Textiles (USA), Inc. v. Burlington Coat Factory Warehouse Corp.*, No. 13 CIV. 1725 LGS, 2013 WL 3835191, at *4 (S.D.N.Y. July 25, 2013). Furthermore, TFPIA does not and cannot purport to extinguish FDUTPA's pleading requirement that a claim against a retailer must have had "actual knowledge it was violating the act." *Herazo*, 2015 WL 4514510, at *3 n.2.

Plaintiff also fails to state a FDUTPA claim because she fails to plead that any FDUTPA violation caused actual damages. Any damages based on allergic reactions (hypothetical or actual) are not recoverable under FDUTPA.[5] Fla. Stat. § 501.212 ("This part does not apply to: . . . (3) A claim for personal injury . . . ."). And Plaintiff could not have suffered any economic damages because, as made clear on her packing slip, Plaintiff was (and continues to be) able to return the PimaCott Pillowcases for a full refund. [DE 14-3 at 3.] Any economic damages allegedly suffered by Plaintiff are a result of her failure to seek a refund (which is still available), not any allegedly deceptive practice of BB&B. *Hamilton v. Gen. Mills, Inc.*, No. 6:16-CV-382-MC, 2016 WL 4060310, at *6 (D. Or. July 27, 2016); *cf. Johnson v. Bobcat Co.*, 175 F. Supp. 3d 1130, 1137 (D. Minn. 2016) ("[T]he Court is persuaded that a pre-litigation refund offer for complete relief could potentially deprive a plaintiff of Article III standing . . . ."). As Plaintiff fails to plead actual damages as a result of a FDUTPA violation, her claim must be dismissed. *Reilly v. Chipotle Mexican Grill, Inc.*, No. 16-17461, 2017 WL 4410952, at *3 (11th Cir. 2017)

---

[5] Therefore, even if not dismissed for lack of standing, any allergy-related claim must still be dismissed on the merits.

(holding that FDUTPA claim failed where plaintiff was not damaged); *QSGI, Inc. v. IBM Glob. Fin.*, No. 11-cv-80880, 2012 WL 1150402, at *4 (S.D. Fla. Mar. 14, 2012) (dismissing FDUTPA claim "because QSGI failed to plead 'actual damages' as required by Florida law.").

Furthermore, the damages that Plaintiff seeks are "restitution and disgorgement." [DE 14 ¶ 70.] But the only damages FDUTPA provides for consumers are "actual damages." Fla. Stat. § 501.211. The FDUTPA claim should be dismissed to the extent it seeks restitution or disgorgement, which are not remedies provided to consumers under FDUTPA. *Fin-S Tech, LLC v. Surf Hardware Int'l-USA, Inc.*, No. 13-CV-80645, 2014 WL 12461349, at *11 (S.D. Fla. Jan. 7, 2014) ("Here, for its alleged violation of FDUTPA, Fin-S seeks, *inter alia*, 'all damages,' including disgorgement of SHI's profits and gains. This is beyond the scope of recoverable damages provided by FDUTPA."); *see generally Rodriguez v. Recovery Performance & Marine, LLC*, 38 So. 3d 178, 180 (Fla. Dist. Ct. App. 2010) (holding that "actual damages" under FDUTPA are limited to "the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties").

### 3.  Plaintiff Fails to State a Declaratory Judgment Claim (Count II).

The Declaratory Judgment Act's "actual controversy" requirement is coterminous with Article III's "cases and controversies" requirement. *Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1347 (11th Cir. 1999). Because Plaintiff fails to allege any likelihood of a future injury, *see* Part III(A)(3) *supra*, she also fails to state a declaratory-judgment claim.

LEÓN COSGROVE, LLC
255 ALHAMBRA CIR. | SUITE 800 | CORAL GABLES, FL 33134 | T 305.740.1975 | WWW.LEONCOSGROVE.COM

## IV. CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiff's amended complaint.[6]

Dated: October 16, 2017

Respectfully submitted,

*s/ Andrew D. Zaron*
Andrew D. Zaron
 Florida Bar No. 965790
Ellen Ross Belfer
 Florida Bar No. 685208
Jeremy L. Kahn
 Florida Bar No. 105277
**LEÓN COSGROVE, LLC**
255 Alhambra Circle, Suite 800
Coral Gables, Florida 33134
Telephone:   305.740.1975
Facsimile:   305.437.8158
Email:   azaron@leoncosgrove.com
Email:   ebelfer@leoncosgrove.com
Email:   jkahn@leoncosgrove.com
Email:   lburns@leoncosgrove.com
Email:   eperez@leoncosgrove.com

And

Marcos D. Jimenez, Esq.
**MARCOS D. JIMENEZ, P.A**.
255 Alhambra Circle
Suite 800
Coral Gables, FL 33134
Email:  mdj@mdjlegal.com

*Counsel for Defendant Bed Bath & Beyond, Inc.*

---

[6] BB&B reserves the right to seek attorneys' fees and costs if it prevails. *See* Fla. Stat. § 501.2105.

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on October 16, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which in turn will serve a copy by electronic mail to all counsel of record.

Angela Arango-Chaffin, Esq.
540 West Avenue, Suite 1113
Miami Beach, Florida 33139
Tel: (713) 818-2515
Email: angela@chaffinlawfirm.com

*Attorney for Plaintiff Candace Hardy*

> */s/ Andrew D. Zaron*
> Andrew D. Zaron