UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 17-cv-22315-RNS

CANDACE HARDY,

    Plaintiff,

vs.

BED BATH & BEYOND, INC.,

    Defendant.
_____/

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS**

Defendant Bed Bath & Beyond, Inc. ("BB&B") submits its reply in support of its Motion to Dismiss Amended Complaint [DE 17], and states as follows.

### I.    INTRODUCTION

Plaintiff's response does nothing to save her claims from dismissal. First, Plaintiff's FDUTPA claim fails under the "retailer exemption." Plaintiff concedes that she fails to plead facts demonstrating that BB&B, a retailer, had actual knowledge of the alleged misrepresentation. Plaintiff instead misleads the Court with her argument that there is no actual knowledge requirement under FDUTPA. Plaintiff relies on inapplicable case law that does not even address claims against a retailer. Plaintiff also relies on an alleged violation of a federal statute (for which there is no private right of action) in an improper attempt to have the Court ignore FDUTPA's express language limiting claims against retailers.

Second, Plaintiff attempts to manufacture a factual dispute regarding her "test" where none exists. BB&B's motion to dismiss does not challenge the accuracy of Plaintiff's test, i.e., the fiber length measurements she alleges. Rather, BB&B challenges the applicability of

Plaintiff's test. While Plaintiff seeks to rely on measurements for Pima cotton found in the Code of Federal Regulations ("CFR"), Plaintiff declines to use the very test the CFR mandates.

<u>Third</u>, to the extent her claims are not wholly dismissed, Plaintiff at least lacks standing to assert claims based on the labels and packaging of the product itself. Plaintiff alleges only that she purchased the PimaCott Pillowcases on BB&B's website. Plaintiff pleads no facts demonstrating that she saw any label or packaging of the PimaCott Pillowcases before her purchase. Therefore, her claim must be limited to representations on BB&B's website.

<u>Finally</u>, Plaintiff fails to allege actual injury. She concedes that she is not seeking damages based on allergy injuries. Instead, the only damages for which she seeks redress is for the "loss of the purchase price." However, because Plaintiff was entitled to a refund for the purchase price (as reflected on the receipt attached to her amended complaint), she has suffered no injury. The failure to allege an injury also precludes Plaintiff's claims for declaratory or injunctive relief.

## II.     ARGUMENT

**A. Plaintiff Fails to State a FDUTPA Claim.**

**1. Plaintiff Relies on a <u>Manufacturer</u> Case to Rebut the <u>Retailer</u> Exemption.**

Plaintiff fails to state a FDUTPA claim because she seeks damages against BB&B, a retailer, for an alleged misrepresentation about a product without making <u>any</u> allegation that BB&B had actual knowledge of the misrepresentation. FDUTPA's plain language says: "[D]amages, fees, or costs are not recoverable under this section against a retailer who has, in good faith, engaged in the dissemination of claims of a manufacturer or wholesaler without actual knowledge that it violated this part." Fla. Stat. § 501.211(2). Following this plain statutory language, courts recognize that a FDUTPA claim "is not properly pled under the statute" against

a retailer where the "complaint lacks an allegation that Defendant had actual knowledge it was violating the act." *Herazo v. Whole Foods Mkt., Inc.*, No. 14-cv-61909, 2015 WL 4514510, at *3 n.2 (S.D. Fla. July 24, 2015).

In the sole case that Plaintiff cites to argue that FDUTPA's <u>retailer</u> exemption is inapplicable, *Gavron v. Weather Shield Manufacturing, Inc.*, the defendant was a <u>manufacturer</u>. 819 F. Supp. 2d 1297, 1298 (S.D. Fla. 2011) ("Weather Shield designs, <u>manufactures</u>, and sells a Legacy Series of windows and doors. Individually and on behalf of a class of similarly-situated individuals, Gavron accuses Weather Shield of designing, <u>manufacturing</u>, marketing, selling, and distributing windows and doors that were materially defective." (emphasis added)). In *Gavron*, the defendant's actual knowledge was irrelevant because the defendant was a manufacturer. Unsurprisingly, the court did not discuss FDUTPA's retailer exemption because the defendant was not a retailer.

Here, *Gavron* has no application because BB&B is undisputedly a retailer. [DE 14 ¶ 1] ("Defendant sells bedding products through bedbathandbeyond.com as well as retail stores located in Florida.").[1] For claims against <u>retailers</u> such as BB&B, FDUTPA expressly "engrafts a requirement that Defendant violated the act <u>with actual knowledge</u>." *Herazo*, 2015 WL 4514510, at *3 n.2 (emphasis added). Because Plaintiff concedes that she pleads no facts to support that BB&B had actual knowledge of any alleged misrepresentation, she fails to state a FDUTPA

---

[1]In addition to the amended complaint itself, BB&B's 10-K also states that BB&B "is a retailer." Bed Bath & Beyond, Inc., Form 10-K at 4 (Apr. 25, 2017), *available at* https://www.sec.gov/Archives/edgar/data/886158/000117184316009400/f10k_042616p.htm. Plaintiff states that BB&B's Form 10-K "is incorporated into th[e] First Amended Class Complaint." [DE 14 at 2 n.1.] Documents incorporated by reference into a complaint, such as BB&B's Form 10-K, are properly considered on a motion to dismiss. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (per curiam); *Gonzalez v. City of Hialeah*, No. 17-cv-20128, 2017 WL 3432300, at *1 n.1 (S.D. Fla. Aug. 9, 2017) (Scola, J.).

claim. *Id.*

In another attempt to excuse her failure to satisfy the retailer exemption, Plaintiff asks the Court to ignore FDUTPA's plain statutory language because BB&B allegedly violated the Textile Fiber Products Identification Act ("TFPIA"), which Plaintiff claims lacks an "actual knowledge" requirement. But the TFPIA "does not provide for a private right of action." *Beautiful Home Textiles (USA), Inc. v. Burlington Coat Factory Warehouse Corp.*, No. 13 CIV. 1725 LGS, 2013 WL 3835191, at *4 (S.D.N.Y. July 25, 2013). While the TFPIA may be relevant to whether a plaintiff alleges a "deceptive act" under FDUTPA, it does not overwrite the express statutory language limiting FDUTPA's civil remedy provision to exclude claims against retailers without actual knowledge. Regardless of any alleged TFPIA violation, FDUTPA contains an express "actual knowledge" requirement for claims against retailers. Fla. Stat. § 501.211(2); *Herazo*, 2015 WL 4514510, at *3 n.2. The Court cannot ignore the statutory language that defines the scope of the private claim the statute affords.

**2. Plaintiff Fails to Plead Facts That Plausibly Connect Her "Test" to Her Claims.**

Plaintiff is simply wrong that her use of the inapplicable ASTM D5103 test method is a factual dispute that precludes dismissal of her Amended Complaint. *See Kardovich v. Pfizer, Inc.*, 97 F. Supp. 3d 131, 138 (E.D.N.Y. 2015) ("As here, where plaintiffs point to scientific studies that they allege actually disprove a product's claims, such a stark disconnect between the scientific studies and the claims made about Centrum's benefits is fatal to plaintiffs' complaint."); *see also Padilla*, 2013 WL 195769, at *3; *Eckler*, 2012 WL 5382218, at *6. Here, Plaintiff expressly relies on the Code of Federal Regulations for her allegation that the fiber length of the cotton in the pillowcases is too short to be Pima cotton. [DE 22 at 11 n.5.]  Yet, Plaintiff ignores the express CFR directive that cotton length be measured using the ASTM

D1440-7 test method. *See* 28 CFR §28.303 ("Length measurements shall be performed in accordance with the 'Standard Test Method for Length and Length Distribution of Cotton Fibers' (Array Method), ANSI/ASTM D 1440–77 (1982).").

In any event, the measurements under the test mandated by the CFR are based on samples taken from the cotton gin, i.e., at the beginning of the manufacturing process. In contrast, here, Plaintiff used the ASTM D5103 test method to measure cotton fiber lengths <u>after</u> the manufacturing process.[2] As noted in BB&B's motion to dismiss, the manufacturing process affects the length of cotton fiber.

**B. Plaintiff Lacks Standing for Any Claims Based on Labels She Did Not See Prior to Her Online Purchase.**

To the extent Plaintiff's claims are not otherwise dismissed, Plaintiff lacks standing to assert any claims based on labels and packaging rather than representations on BB&B's website. Plaintiff alleges that she purchased the PimaCott Pillowcases online via BB&B's website. [DE 14 ¶ 11.] The amended complaint is devoid of any allegations that Plaintiff saw any label or packaging of the PimaCott Pillowcases prior to her purchase. Plaintiff's argument in her response that the allegedly "false label is merely a continuation" of the website is unavailing because Plaintiff does not allege she relied on the product label in the store when purchasing the PimaCott Pillowcases.

Accordingly, Plaintiff's claim must be limited to representations on BB&B's website,

---

[2] Plaintiff attempts to attach some significance to the fact that the ASTM D5103 test uses the word "manufactured" in its title, "Standard Test Method for Length and Length Distribution of Manufactured Staple Fibers." However, the term "manufactured" in the title is not a reference to manufactured consumer goods; rather, it is a reference to synthetic or man-made fibers, as opposed to natural fibers.

and she lacks standing to assert any claim based on labels or packaging.[3] *See Azimpour v. Sears, Roebuck & Co.*, No. 15-CV-2798 JLS (WVG), 2017 WL 1496255, at *3–4 (S.D. Cal. Apr. 26, 2017) ("The Court previously found that Plaintiff had, at minimum, 'standing to sue for his alleged injury based solely on the in-store advertisement he relied on in making his pillow purchase.' . . . However, to the extent Plaintiff still seeks to incorporate other media platforms into this case, the Court again finds that Plaintiff fails to adequately plead reliance on online or print advertisements, among possible others, for standing purposes."); *In re Mercedes-Benz Emissions Litig.*, No. CV 16-881 (JLL)(JAD), 2016 WL 7106020, at *8 (D.N.J. Dec. 6, 2016) (holding that plaintiff must base the "fairly traceable" element of standing on the medium of advertising that she viewed when purchasing product). Plaintiff's attempts to distinguish these cases on the superficial ground that they involved different states' consumer protection statutes is unavailing, as Article III governs Plaintiff's standing regardless of the state statute she is suing under. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 804 (1985) ("Standing to sue in any Article III court is . . . a federal question which does not depend on the party's prior standing in state court.").

### C. Plaintiff Did Not Suffer an Actual Injury.

Despite suggestions in her amended complaint that she sought claims based on alleged "allergy injuries" (suffered by others), Plaintiff now abandons any such claims. She makes clear that "allergy" claims are "nonexistent" in her amended complaint and that suffering an allergic reaction is not "even *a* damage" that is a basis for her claims. [DE 22 at 4.] The Court should therefore dismiss any claim based on allergies or strike the immaterial allegations regarding

---

[3] In addition to lacking Article III standing, for the same reason Plaintiff cannot satisfy FDUTPA's causation element as to claims not based on BB&B's website.

allergic reactions from the amended complaint. *See* Fed. R. Civ. P. 12(f) ("The court may strike from a pleading an insufficient defense or any redundant, <u>immaterial</u>, impertinent, or scandalous matter." (emphasis added)). Plaintiff should not be allowed to include immaterial allegations in her complaint that appear to be an alleged basis for damages and then claim that those allegations are not the basis of the claim.

Plaintiff's statement that potential allergic reactions are relevant to the materiality of the "100% Pima cotton" representation reflects a basic lack of comprehension of federal standing. If Plaintiff does not have "textile allergies," then potential allergic reactions cannot be a reason the representation is material <u>to her</u>. In any event, as explained in BB&B's motion to dismiss, Plaintiff alleges no plausible connection between the alleged misrepresentation and potential allergic reactions, because she does not allege that the PimaCott Pillowcases contain any of the allergens she refers to in her amended complaint. [DE 17 at 4, n.3, 6.]

Having admitted she did not suffer allergy damages, Plaintiff recognizes that the only damage she suffered is the money she "parted with" to purchase the pillowcase. *See* [DE 22 at 4.] In reality, however, Plaintiff was not damaged. As reflected on the receipt attached as Exhibit 3 to the First Amended Complaint, Plaintiff had (and has) the right to receive a full refund for the money she paid. [*Id*., Ex. 3.] In an effort to avoid this inescapable conclusion, Plaintiff argues that *Johnson v. Bobcat Co.*, 175 F. Supp. 3d 1130 (D. Minn. 2016), stands for the proposition that a "pre-litigation refund [does] not deprive a plaintiff of Article III standing." *Id*. at 13. Yet, the Court in *Johnson* was persuaded that a "pre-litigation refund offer for complete relief <u>could</u> deprive a plaintiff of Article III standing." *Johnson*, 175 F. Supp. 3d. at 1137. (emphasis added). Because the plaintiff in *Johnson* alleged consequential and incidental damages, in addition to the actual damages for the money paid to buy the machinery at issue, the

pre-litigation refund offer did not provide the plaintiff in that case complete relief. *Id*. Therefore, the *Johnson* court held that the plaintiff in that case had standing notwithstanding the refund offer. Here, by contrast, the pre-litigation refund offer by BB&B does provide complete relief because the only damage alleged by Plaintiff is the money she paid to purchase the pillowcase. Because BB&B offered Plaintiff complete relief for the damages she allegedly suffered, Plaintiff does not have Article III standing under *Johnson* or the various other cases cited by BB&B in its Motion to Dismiss.

Plaintiff's argument that she has standing to allege a FDUPTA violation so that she can "protect the consuming public at large from unfair and deceptive sales practices," [DE 22 at 13], is likewise misguided. Plaintiff recognizes that to have standing under FDUPTA, she must allege actual damages. [*Id*. at 3.] Thus, she does not have standing by merely alleging that she is the protector of the public at large. Similarly, while alleging an unfair and deceptive sales practice in violation of the TFPIA may satisfy the first element of a cause of action under FDUPTA, it does not by itself satisfy the other elements, which require allegations of actual damages. [*Id*. at 9.] If BB&B did engage in unfair and deceptive sales practices (which it did not), the Federal Trade Commission can seek redress under the TFPIA. Plaintiff cannot shoehorn the TFPIA – which does not provide a private right of action – into FDUPTA to achieve standing or to state a claim where she has not alleged actual damages.

**D. Plaintiff Concedes That She Lacks Standing to Seek Prospective Relief.**

Finally, it is well-established that a plaintiff lacks Article III standing to seek prospective relief where she fails to plead the likelihood of a future injury. *Wooden v. Bd. of Regents of the Univ. Sys.*, 247 F.3d 1262, 1283 (11th Cir. 2001). Therefore, "a plaintiff does not have standing to seek prospective injunctive relief against a manufacturer or seller engaging in false or

misleading advertising unless there is a likelihood that the plaintiff would suffer future harm from the defendant's conduct—i.e., the plaintiff is still interested in purchasing the product in question." *Barron v. Snyder's-Lance, Inc.*, No. 13-cv-62496, 2015 WL 11182066, at *10 (S.D. Fla. Mar. 20, 2015) (citation omitted); *see also In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 757 (C.D. Cal. 2014); *Mason v. Nature's Innovation, Inc.*, No. 12CV3019 BTM DHB, 2013 WL 1969957, at *4 (S.D. Cal. May 13, 2013). Plaintiff <u>concedes</u> that her amended complaint lacks such an allegation. [DE 22 at 8, n.4.] Accordingly, her claims must be dismissed to the extent they seek prospective relief. *See Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1651 (2017) (holding that "a plaintiff who has standing to seek damages must also demonstrate standing to pursue injunctive relief" because "a plaintiff must demonstrate standing . . . for <u>each form of relief</u> that is sought" (emphasis added)).

Plaintiff's argument that she has standing because she allegedly satisfies the elements for prospective relief under FDUTPA ignores that this Court is a court of limited jurisdiction. Regardless of the underlying state statute, Plaintiff must also satisfy Article III. *Phillips Petroleum Co.*, 472 U.S. at 804 ("Standing to sue in any Article III court is . . . a federal question which does not depend on the party's prior standing in state court."). Regardless of whether FDUTPA requires an intent to purchase the product in the future to allow for prospective relief, Article III plainly does. *See, e.g.*, *Barron*, 2015 WL 11182066, at *10–11. Plaintiff's disregard of basic Article III requirements mandates dismissal.[4]

---

[4] Plaintiff contends that she "can certainly add the allegation that she intends to purchase more 100% Pima cotton pillowcases from BBB if labeled correctly if the Court deems it necessary." [DE 22 at 8 n.4.] It is troubling that Plaintiff is willing, solely for the purpose of overcoming a motion to dismiss, to include any allegations the Court deems necessary to satisfy standing requirements regardless of whether they are actually true. *See generally* Fed. R. Civ. P. 11. In any event, this is an admission that the operative complaint currently fails to allege sufficient

### III.   CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiff's amended complaint.[5]

Dated: November 13, 2017

Respectfully submitted,

*s/ Andrew D. Zaron*
Andrew D. Zaron
  Florida Bar No. 965790
Ellen Ross Belfer
  Florida Bar No. 685208
Jeremy L. Kahn
  Florida Bar No. 105277
**LEÓN COSGROVE, LLP**
255 Alhambra Circle, Suite 800
Coral Gables, Florida 33134
Telephone:    305.740.1975
Facsimile:    305.437.8158
Email:  azaron@leoncosgrove.com
Email:  ebelfer@leoncosgrove.com
Email:  jkahn@leoncosgrove.com
Email:  lburns@leoncosgrove.com
Email:  eperez@leoncosgrove.com

And

Marcos D. Jimenez, Esq.
**MARCOS D. JIMENEZ, P.A**.
255 Alhambra Circle
Suite 800
Coral Gables, FL 33134
Email:  mdj@mdjlegal.com

*Counsel for Defendant Bed Bath & Beyond, Inc.*

---

facts to establish standing for prospective relief. Any claims for prospective relief must be dismissed regardless of what Plaintiff may plan to allege in an amended pleading to "fix" her claims, if the Court grants her leave to do so.

[5] The remaining arguments in Plaintiff's response do not merit further discussion and, to avoid unnecessary repetition, BB&B stands on the arguments and authorities cited in its motion.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 13, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which in turn will serve a copy by electronic mail to all counsel of record.

>/s/ Andrew D. Zaron
>Andrew D. Zaron